[No. G013013. Fourth Dist., Div. Three. Jan. 21, 1994.]

VIRGINIA LE ELDER, a Minor, etc., et al., Plaintiffs and Appellants, v. DENNIS LEE RICE et al., Defendants and Respondents.

**COUNSEL**

Fund & Ayers and William Scott Ayers for Plaintiffs and Appellants.

Lawrence S. Eisenberg and Alexandra M. Day as Amici Curiae on behalf of Plaintiffs and Appellants.

Wesierski & Zurek, Christopher P. Wesierski and Michael Paul Thomas for Defendants and Respondents.

**OPINION**

**SONENSHINE, J.**—Virginia Le Elder, through her guardian ad litem, Lawrence S. Eisenberg, and Le Hang Le appeal a judgment in favor of McDonnell Douglas Corporation. Le Elder attempted to hold McDonnell Douglas liable under a respondeat superior theory for the alleged negligence of its employee, Dennis Lee Rice. The complaint alleged Rice was acting within the scope of his employment when his vehicle struck Le Elder, causing her severe and permanent physical and neurological injuries. The employment issue was separately tried to the court prior to trial of the other issues. The court concluded McDonnell Douglas was not liable. We agree.

I

The relevant facts are brief. Rice was returning to his home after dropping his children at school when his vehicle struck Le Elder as she attempted to

cross the street on her bicycle. At the time of the accident, Rice's job as a regional service manager required him to be available 24 hours a day, 7 days a week. His vehicle was registered in the corporation's Runsheimer Plan, under which employees were reimbursed for various vehicle maintenance costs and paid 6 cents per company-business mile. Employees such as Rice were required to log at least 5,000 business miles annually[1] and name McDonnell Douglas as an additional insured on their personal automobile liability policy. Rice scheduled his own working hours and locations. He had an office in Santa Ana, with designated hours from 8 a.m. to 5 p.m. He normally left his house for the office between 6:30 and 7 a.m. On the morning of the accident, he would have arrived at the office late because he intended to make a business call from his home after dropping off his children.

## II

■ This would be an unpublishable, run-of-the-mill scope-of-employment case, but for appellants' contention that an employer should automatically incur respondeat superior liability when the conditions of employment require on-call availability of the employee. We expressly reject any suggestion that reason, fairness or public policy necessarily demands 24-hour employer liability for the conduct of employees who are on-call 24 hours a day. The point warrants a brief discussion.

## III

Under the doctrine of respondeat superior, an employer is vicariously liable for an employee's torts committed within the scope of the employment. (Civ. Code, § 2338.) ■ Because it is unjust to exonerate a business from responsibility for injuries occurring in the course of its characteristic activities (*Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 208 [285 Cal.Rptr. 99, 814 P.2d 1341]), an employee's scope of employment is determined by ascertaining whether the risk involved was typical or broadly incidental to the enterprise undertaken by the employer. Where the employee's conduct has substantially deviated from his or her duties, it is unjust to hold the employer liable. (*Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968 [227 Cal.Rptr. 106, 719 P.2d 676].) Thus, it is necessary to determine the main purpose of injury-producing activity: If it was the pursuit of the employee's personal ends, the employer is not liable. (*Harris* v. *Oro-Dam Constructors* (1969) 269 Cal.App.2d 911, 916 [75 Cal.Rptr. 544].)

Generally, the issue of scope of employment is a question of fact. However, it becomes a question of law when the facts are undisputed and no

---

[1]Rice did not log the mileage for the trip to his children's school the morning of the accident.

conflicting inferences are possible. (*Perez* v. *Van Groningen & Sons, Inc.*, *supra*, 41 Cal.3d 962, 968.) Because there are no disputed facts, we apply a de novo review. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

The trial judge found "Rice's activities in driving his children to school did not confer any benefit on his employer. His intention to make a business call from his home rather than his office was for his own benefit only and conferred no benefit on his employer. The reimbursement Rice received for the use of his car on company business did not alter the legal obligations of McDonnell Douglas." The trial court mistakenly applied a "benefit to the employer" analysis. (*Perez* v. *Van Groningen & Sons Inc.*, *supra*, 41 Cal.3d 962, 969.) It may have been referring to the benefit-to-the-employer exception to the "coming and going" rule, but that rule is inapt here. Amici curiae contend this misinterpretation requires remand for reconsideration under the proper legal analysis. But because scope of employment is a question of law, there is no need to remand, and, in any event, the result is the same. The question is: Was Rice's trip to his children's school a substantial personal deviation from his employment duties such that it would be unfair to hold the employer vicariously liable? Yes.

Rice's *purpose* was to take his children to school, a purely personal activity. Rice testified he decided to drive his children to school because he was going to the office late. He planned to eat breakfast and read the paper when he returned home. He did not intend to make the business call for approximately one hour and fifteen minutes after his return home. The entire trip was a substantial deviation from his employment duties. Nonetheless, Le Elder argues "driving the van was typical, usual and inherent in the employer's enterprise, as Rice could not have performed his duties without it, and being on the road at that time of day was his usual custom." She contends, "the possibility of accidents resulting from Rice's use of the van were quite obviously foreseeable to McDonnell Douglas, as it mandated the corporation itself be named as an additional insured on Rice's personal automobile liability insurance policy." Furthermore, she maintains the return trip was not a substantial personal deviation because the personal errand had been completed and Rice was on his way home, a location from which a business call was to be made. But, in light of the personal *nature* of Rice's activity, these factors are irrelevant.[2]

Le Elder also contends Rice's activities were within the scope of his employment because McDonnell Douglas derived a substantial benefit from

[2]Le Elder argues if respondeat superior does apply, liability would not be barred by the coming-and-going rule because Rice does not have an everyday commute. And, in any event, if the rule were found to apply, she argues, the "vehicle use" exception to the rule imposes liability because McDonnell Douglas required Rice to furnish a vehicle as a condition of his

the enterprise that gave rise to the injury. (*Mary M.* v. *City of Los Angeles, supra,* 54 Cal.3d 202, 209.) She points to the following facts: Rice was on call 24 hours a day, 7 days a week; he was reimbursed for his pager batteries; he had the ability to respond to calls at any hour from any location; he had wide latitude in performing his job duties; and he planned to make a phone call to his managers.

The existence or nonexistence of employer benefits is not dispositive in determining vicarious liability. (*Perez* v. *Van Groningen & Sons, Inc., supra,* 41 Cal.3d 962, 969.) Rather, the dispositive factor is whether an employee was acting within the scope of employment when the tort was committed. (Civ. Code, § 2338). Since we have already answered this question, the employer benefits argument fails.

## IV

 Amici curiae argue that even if Rice was engaged in purely personal activity at the time of the incident, McDonnell Douglas should be liable under a totality-of-circumstances analysis, i.e., Rice was on call 24 hours a day, 7 days a week, wore a pager, had to log 5,000 business miles a year, was reimbursed for vehicle maintenance costs and recovered some of his travel expenses.[3] As discussed *ante,* this is a very ordinary scope-of-employment case, and the totality-of-circumstances argument advanced by amici curiae makes it no less so. The totality of circumstances is of no legal significance where, as here, an employee is engaged in purely personal activity when his or her tort causes injury to a third party.

Public policy would be ill-served by a rule establishing 24-hour employer liability for on-call employees, regardless of the nature of the employee's activities at the time of an accident. Respondeat superior is imposed for three policy reasons: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (*Mary M.* v. *Superior Court, supra,* 54 Cal.3d 202, 209). None of these goals would be legitimately accomplished by a rule establishing automatic 24-hour employer liability for 24-hour on-call employees. First, employer liability would not prevent a recurrence of the tortious conduct because an employer has no right to control the

---

employment. Based on our holding that respondeat superior does not apply, we need not reach either contention.

[3]Payment of travel expenses does not necessarily establish the existence of employer benefit so that the employer should bear responsibility for the risk of injuries to innocent third parties. (*Harris* v. *Oro-Dam Constructors, supra,* 269 Cal.App.2d 911, 917.) We do not find the factor of significance here.

purely personal conduct of an employee. Second, although the deep pocket of an employer might give greater assurance of compensation for the victim, that desired economic end would be achieved *inequitably* because the victim's losses would *not* be borne by the person who benefitted from the injury-producing activity.

Modern technology has changed the means by which we communicate. Beepers, pagers, facsimile machines and cellular phones keep us literally at a fingertip's distance from one another. But on-call accessibility or availability of an employee does not transform his or her private activity into company business. The first question must always focus on scope of employment. Where the injury-producing activity is beyond that scope, no totality of other circumstances will result in respondeat superior liability.[4] Here, as a matter of law, Rice was not within the scope of employment when he injured Le Elder, and McDonnell Douglas is not vicariously liable for his tort.

The judgment is affirmed. McDonnell Douglas shall recover its costs on appeal.

Sills, P. J., and Crosby, J., concurred.

---

[4]See *Henriksen* v. *City of Rialto* (1993) 20 Cal.App.4th 1612 [25 Cal.Rptr.2d 308], where the employer city was not liable for an off-duty police officer's wounding of another officer when the weapon he was allowed to carry at all times accidentally discharged. He was not acting within the scope of this employment.