Filed 7/31/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALAN PURTON et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> MARRIOTT INTERNATIONAL, INC., et al., <br><br> Defendants and Respondents. | D060475 <br><br><br> (Super. Ct. No. 37-2010-00099161-CU-PA-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County,

Richard E. L. Strauss, Judge.  Reversed.

Mardirossian & Associates, Garo Mardirossian, Armen K. Akaragian;

Law Offices of Eran Lagstein, Eran Lagstein, Dimitrios N. Theofilopoulos; The Ehrlich

Law Firm and Jeffrey I. Ehrlich for Plaintiffs and Appellants.

Brady, Vorwerck, Ryder & Caspino, Robert B. Ryder and Ravi Sudan for

Defendants and Respondents.


In this case, an employee consumed alcoholic beverages at an employer hosted

party and became intoxicated.  The employee arrived home safely, but then left to drive a

coworker home. During that drive, the employee struck another car, killing its driver. The trial court granted summary judgment for the employer on the ground the employer's potential liability under the doctrine of respondeat superior ended when the employee arrived home.

We hold that an employer may be found liable for its employee's torts as long as the proximate cause of the injury (here, alcohol consumption) occurred within the scope of employment. It is irrelevant that foreseeable effects of the employee's negligent conduct (here, the car accident) occurred at a time the employee was no longer acting within the scope of his or her employment. We also hold that no legal justification exists for terminating the employer's liability as a matter of law simply because the employee arrived home safely from the employer hosted party. Accordingly, we reverse the judgment in favor of the employer.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Marriott International, Inc. (Marriott) employed Michael Landri as a bartender at the Marriott Del Mar Hotel (the Hotel). Dennis Fraher was the Hotel general manager and Joseph Emma was the assistant general manager. Emma was the second highest ranking person at the Hotel from 2005 to 2009. Sarah Hanson was the department head or general manager for the restaurant. Emma was Hanson's immediate supervisor.

In December 2009, the Hotel held its annual holiday party as a "thank you" for its employees and management. Marriott did not require that its employees attend the party.

2

Emma and Hanson decided that each party attendee would receive two drink tickets. They planned to serve only beer and wine at the party.

Landri did not work on the day of the party. Before the party, Landri drank a beer and a shot of "Jack Daniel's" whiskey at his home. Page Savicki drove Landri and three other individuals to the party. They arrived at the party at about 6:15 p.m. Landri took a flask to the party, which he estimated held about five ounces, filled to some degree with Jack Daniel's.

Hanson was the only bartender at the party. At one point during the party, Hanson had a bottle of Jack Daniel's from the Hotel's liquor supply brought to the bar. Landri recalled filling his flask once during the party, but it might have been more. At about 9:00 p.m., Landri, Savicki and several other people left the party. Landri "believe[d]" that Savicki drove home. Savicki and another person support this belief, while a fourth person claimed that Landri drove. Landri did not consume any alcohol after leaving the Hotel.

After about 20 minutes, Landri decided to drive home a coworker that had become intoxicated at the party. While doing so, Landri struck a vehicle driven by Dr. Jared Purton, killing Dr. Purton. Following the accident, Landri had a .16 blood alcohol level. He pleaded guilty to gross vehicular manslaughter while under the influence of alcohol and received a six-year prison sentence.

Plaintiffs, Dr. Purton's parents, filed this wrongful-death action against Landri, Marriott and others. As relevant to the issue before us, Plaintiffs alleged that Marriott held the party for its benefit, including to improve relations between employees, improve

3

relations between it and employees, and increase the continuity of employment by providing a fringe benefit. As a bartender, Landri had an above average education regarding the effects of drinking alcohol. Landri became extremely intoxicated at the party. Although intoxicated, Landri was allowed to leave the Hotel and drive. Landri arrived home and then decided to drive another person home. While still intoxicated and driving over 100 miles per hour, Landri rear-ended Dr. Purton's vehicle.

Marriott moved for summary judgment on the ground it was not liable because the accident did not occur within the scope of Landri's employment. The trial court granted the motion, finding that at the time of the accident, Landri was not acting within the scope of his employment. Plaintiffs timely appealed.

DISCUSSION

I. *Standard of Review*

When a defendant moves for summary judgment, the defendant "bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) If the defendant meets its initial burden, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) "We review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017.)

4

## II. *Respondeat Superior Liability*

"Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208 (*Mary M.*).) Early authorities sought to justify the respondeat superior doctrine on a number of theories, including control by the employer of the employee. (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 959 (*Hinman*).) The modern justification for respondeat superior is a deliberate policy allocation of risk. (*Ibid.*)

Under the respondeat superior doctrine, the term "scope of employment" has been interpreted broadly. (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004 (*Farmers*).) "'[T]he employer's liability extends beyond his actual or possible control of the employee to include risks inherent in or created by the enterprise.'" (*Id.* at p. 1003, italics deleted.) "'[T]he fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer.'" (*Id.* at p. 1004.) Thus, an employer's vicarious liability may extend to the employee's negligence, willful and malicious torts, or acts that contravene an express company rule and confer no benefit to the employer. (*Ibid.*)

The plaintiff bears the burden of proving that the employee's tortious act was committed within the scope of employment. (*Mary M.*, *supra*, 54 Cal.3d at p. 209.) "Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when 'the facts are undisputed and no conflicting inferences are possible.'" (*Id.* at p. 213.)

5

Significantly, the imposition of respondeat superior liability is not dependent on the employer's undertaking any act or upon any fault by the employer. (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967 (*Perez*).) Rather, an employer may be vicariously liable for an employee's tort if the employee's act was an "'outgrowth'" of his employment, "'"inherent in the working environment,"'" "'"typical of or broadly incidental to"'" the employer's business, or, in a general way, foreseeable from the employee's duties. (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 298–299.) Foreseeability in the context of respondeat superior liability must be distinguished from foreseeability as a test for negligence. (*Farmers*, *supra*, 11 Cal.4th at p. 1004.) "'"[F]oreseeability" as a test for respondeat superior merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.'" (*Ibid.*, italics deleted.)

### III. *Analysis*

Marriott contends the trial court properly granted summary judgment because the undisputed facts show that Landri was outside the scope of his employment when the accident occurred and Landri's purpose for leaving his home was unrelated to his work. Put simply, Marriott argues that any liability it faced under the respondeat superior doctrine terminated as a matter of law when Landri arrived home safely after the party. Plaintiffs assert the trial court improperly granted the motion because Landri's intoxication arose within the scope of employment; accordingly, Marriott's respondeat

superior liability followed the risk created by the intoxication wherever it proximately caused harm.

As we shall explain, the trial court improperly granted summary judgment because a reasonable trier of fact could find that Landri acted negligently by becoming intoxicated at the party, that this act was within the scope of his employment and proximately caused the car accident which resulted in Dr. Purton's death.

A.  Alleged Negligent Act

We begin by examining Landri's alleged negligent act, as we must first determine this act before we can ascertain whether the act occurred within the scope of his employment.  Various jurisdictions have addressed this issue and two schools of thought exist based on how the doctrine of respondeat superior liability has developed in that particular jurisdiction.  Under the first view, followed by Arizona, Illinois and Kansas, the accident itself must occur at a time that the employee is acting within the scope of his or her employment.  (*Bruce v. Chas Roberts Air Conditioning* (Ct.App. 1990) 166 Ariz. 221, 226; *Holtz v. Amax Zinc Co.* (1988) 165 Ill.App.3d 578, 583–584; *Thies v. Cooper* (1988) 243 Kan. 149, 156.)  Marriott advocates this view, focusing on whether Landri's alleged tortious act of driving while intoxicated was within the scope of his employment.

Under the second view, followed by the Supreme Courts of Hawai'i, Oregon and Washington, it is sufficient that the alcohol consumption occurred within the scope of employment.  (*Wong-Leong v. Hawaiian Indep. Refinery* (1994) 76 Hawai'i. 433, 441; *Chesterman v. Barmon* (1988) 305 Or. 439, 443–444; *Dickinson v. Edwards* (1986) 105 Wash.2d 457, 468–469; see also *Chastain v. Litton Systems, Inc.* (4th Cir. 1982) 694 F.2d

7

957, 962.) The question presented is where California falls on this issue. In answering this question, we do not write on a clean slate.

In *McCarty v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 677 (*McCarty*), our high court considered whether an employee's intoxication at an office party "arose in the course of his employment" within the meaning of workers' compensation law. (*Id.* at pp. 681–682.) It concluded that "[e]mployee social and recreational activity on the company premises, endorsed with the express or implied permission of the employer, falls within the course of employment if the 'activity was conceivably of some benefit to the employer. . . .' [Citations, fn. omitted]" or otherwise was a "customary incident of the employment relationship." (*Ibid.*) Although *McCarty* is a worker's compensation case, our high court has considered worker's compensation cases to be helpful in determining an employer's vicarious liability for its employee's torts because both fields of law allow recovery for an injured party irrespective of proof of the employer's fault. (*Perez*, *supra*, 41 Cal.3d at pp. 967–968, fn 2.)

The *McCarty* court found that the employer's purchase of intoxicants for recurrent gatherings on the premises demonstrated that it considered the gatherings to be company activities that benefited the company by fostering company camaraderie and the discussion of company business. (*McCarty*, *supra*, 12 Cal.3d at p. 682.) It concluded that the employee's attendance at the party came within the scope of his employment because it conceivably benefited the company (*ibid.*) and the record demonstrated that these parties had become "a recognized, established, and encouraged custom." (*Id.* at p. 683.)

8

The *McCarty* court noted that the going and coming rule, which generally exempts an employer from liability for tortious acts committed by employees while going to or coming home from their workplace (*Hinman*, *supra*, 2 Cal.3d at p. 961), did not protect the employer because the employee became intoxicated at his workplace "and this intoxication proximately caused his death." (*McCarty*, *supra*, 12 Cal.3d at p. 681.) After examining other cases, the *McCarty* court stated that "if the proximate cause is of industrial origin, the time and place of injury or death even if foreign to the premises does not serve to nullify recovery." (*Id.* at p. 681.)

Subsequently, the court in *Harris v. Trojan Fireworks Co.* (1981) 120 Cal.App.3d 157 (*Harris*) held that plaintiffs pleaded sufficient facts, which, if proved, would support a jury's determination that an employee's intoxication occurred at a party, that the employee's attendance at the party and intoxication occurred within the scope of his employment and it was foreseeable the employee would attempt to drive home while still intoxicated and might have an accident. (*Id*. at p. 165.) The *Harris* court disregarded whether the employee's trip may have fallen within an exception to the going and coming rule, stating that "the pivotal consideration was not whether an extra trip was required to attend the banquet, but whether there was a sufficient business relationship between the employment and the banquet at which the defendant became intoxicated to hold the employer liable for the employee's negligent driving." (*Ibid*.)

In *Childers v. Shasta Livestock Auction Yard, Inc.* (1987) 190 Cal.App.3d 792 (*Childers*), the court held that an employer was liable for the actions of its off-duty employees, when the employer provided alcohol and permitted the employees to drink at

9

the workplace after hours.  (*Id.* at p. 806.)  In doing so, the *Childers* court applied the test set forth in *McCarty*, noting that the test "is properly applied where an employee undertakes activities within his or her scope of employment that cause the employee to become an instrumentality of danger to others *even where the danger may manifest itself at times and locations remote from the ordinary workplace*."  (*Id.* at pp. 805–806, italics added.)  In other words, "[s]o long as the risk is created within the scope of the employee's employment, the scope of employment must follow the risk so long as it acts proximately to cause injury."  (*Id.* at p. 805.)  As a hypothetical example, the *Childers* court cited an employee manufacturing radioactive fuel that became contaminated on the job and later contaminated nonemployees while playing basketball at a gym far from the jobsite, causing them injury.  (*Ibid.*)  Because the employer created the risk of injury, the *Childers* court concluded that it should bear the cost of the injury.  (*Ibid.*)

Finally, the court in *Bussard v. Minimed, Inc.* (2003) 105 Cal.App.4th 798 (*Bussard*), held that the trial court improperly granted summary judgment for an employer on a respondeat superior theory of liability where the employee suffered pesticide exposure at work, to which she attributed illness and impaired driving that contributed to an accident on her way home from work.  (*Id.* at p. 806.)  The court noted that an employee's unfitness to drive after breathing lingering pesticide fumes for several hours was not such a startling or unusual event so as to render the employee's car accident unforeseeable.  (*Ibid.*)  Despite the fact that the accident occurred on the employee's way home, "the going-and-coming rule was an analytical distraction" because

10

the "thrust of [plaintiff's] claim for vicarious liability was that [the employee] was an 'instrumentality of danger' because of what had happened to her at work." (*Ibid.*)

Thus, existing California case law clearly establishes that an employer may be found liable for its employee's torts as long as the proximate cause of the injury occurred within the scope of employment. It is irrelevant that foreseeable effects of the employee's negligent conduct occurred at a time the employee was no longer acting within the scope of his or her employment. Here, there is sufficient evidence in the record to support a finding that Landri breached a duty of due care owed to the public by becoming intoxicated at the party.

Before the party, Landri consumed a beer and a shot of Jack Daniel's. Savicki testified that she worked as a cocktail waitress, had taken a class on how to recognize intoxicated patrons and that Landri showed no sign of being intoxicated when he left home for the party. Landri drank alcohol at the Hotel until he left the party at about 9:00 p.m. He did not consume any alcohol after leaving the party.

A triable issue of fact exists regarding whether Landri appeared intoxicated after the party. One person claimed that Landri's eyes were "fine" and that Landri was not staggering or slurring his words when he left the party. Savicki initially stated that based on her observations, Landri got "drunk" at the Hotel. However, she later claimed that she "did not think that he was drunk." A police officer that spoke to Landri after the accident noted that Landri smelled of alcohol, slurred his speech and had red, watery and droopy eyes. A bystander that pulled Landri from his car after the accident also smelled alcohol

11

on him.  On the way to the hospital, Landri spontaneously stated, "'I'm a bartender and I know I shouldn't have been driving.'"

B.  Scope of Employment

We now apply the *McCarty* criteria to the facts to determine whether a reasonable trier of fact could conclude that Landri was acting within the scope of his employment when he became intoxicated at the party.  Under *McCarty*, respondeat superior liability attaches if the activities "that cause[d] the employee to become an instrumentality of danger to others" were undertaken with the employer's permission and were of some benefit to the employer or, in the absence of proof of benefit, the activities constituted a customary incident of employment.  (*Childers*, *supra*, 190 Cal.App.3d at p. 805.)

In this case, the evidence shows that the Hotel provided alcohol and permitted the consumption of alcohol brought to the party by Landri.  While Marriott initially planned to serve only beer and wine at the party, Hanson served guests Jack Daniel's from the Hotel's liquor stock and actually refilled Landri's flask from that bottle of Jack Daniel's.  Hanson also had a bottle of Frenet Branca under the bar from the Hotel's liquor room that she shared with certain people.  Emma saw Landri pouring from a flask and shared Jack Daniel's with Landri shortly after Landri arrived at the party.  Emma also shared a shot of alcohol with another employee.  Similarly, Hanson shared shots with Landri.

Additionally, the evidence shows that the party and drinking of alcoholic beverages were not only of a conceivable benefit to Marriott, but were also a customary incident to the employment relationship.  Emma testified that Marriott held the party as a "thank you" for its employees.  Hanson similarly testified that the purpose of the party

12

was "[c]elebration, employee appreciation, holiday spirit, [and] team building." Thus, a trier of fact could conclude that the party and drinking of alcoholic beverages benefitted Marriott by improving employee morale and furthering employer-employee relations.

The evidence also supports a conclusion that the drinking of alcoholic beverages by employees at Marriott was a customary incident to the employment relationship. In general, the evidence suggests that Marriott impliedly permitted employees to consume alcohol while on the job. Hanson stated that employees would finish alcohol left over from parties after their shift, taste new drinks or have drinks purchased for them; however, Emma or Fraher never commented when this happened. At the party, employees had Marriott's express permission to consume beer and wine, with the evidence suggesting that Marriott did not follow its plan to limit consumption of alcohol to two drinks per person. Evidence that Marriott managers consumed hard alcohol with employees at the party and that a Marriott manager served hard alcohol to employees suggests that employees had Marriott's implied permission to consume hard alcohol at the party. Hanson also testified that "historically there has been a lot of drinking and not a lot of control at these types of [employee] parties."

Based on this evidence, a reasonable trier of fact could conclude that Landri was acting within the scope of his employment while ingesting alcoholic beverages at the party.

To avoid this result, Marriott notes that *McCarty*, *Harris,* and *Childers* are all factually distinguishable because, among other things, these cases involved employees that got into accidents when the employee *drove home* from an employer sanctioned

13

event while intoxicated.  Accordingly, Marriott argues that the going and coming rule creates "bright line parameters" that bar its possible vicarious liability.  We disagree.

The going and coming rule is a rule of nonliability to an employer for the negligent acts of its employees while going and coming to work under the rationale that, absent certain exceptions, an employee is not deemed to be acting within the scope of employment while traveling to and from the workplace.  (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 722.)  As we explained above, a trier of fact could conclude that the proximate cause of the accident, Landri's intoxication, occurred within the scope of Landri's employment.  Because a jury could find the proximate cause of the accident occurred at the party, before Landri even attempted to drive, the going and coming rule is not implicated and amounts to an "analytical distraction."  (*Bussard*, *supra*, 105 Cal.App.4th at p. 806.)  Stated differently, we focus on the act on which vicarious liability is based and not on *when* the act results in injury.

Assuming a trier of fact concludes that the proximate cause of the accident occurred within the scope of employment, there is no reasonable justification for cutting off an employer's potential liability as a matter of law simply because an employee reaches home.  As acknowledged by the *McCarty*, *Childers* and *Bussard* courts, the employer's potential liability under these circumstances continues until the risk that was created within the scope of the employee's employment dissipates.  (*McCarty*, *supra*, 12 Cal.3d at p. 681 ["[I]f the proximate cause is of industrial origin, the time and place of injury or death even if foreign to the premises does not serve to nullify recovery."]; *Childers*, *supra*, 190 Cal.App.3d at p. 805 ["[T]he scope of employment must follow the

14

risk so long as it acts proximately to cause injury."]; *Bussard*, *supra*, 105 Cal.App.4th at p. 805 [When "imposing liability for an after-hours accident away from the jobsite, liability follows the employee until the work-spawned risk dissipates."].)

Marriott complains that imposing liability under the facts of this case would not prevent a recurrence of the tortious conduct because it had no right to control the purely personal conduct of Landri after he safely reached home. It asserts that Plaintiffs are asking the court to judicially legislate new law that any employee drinking alcohol at his or her place of employment or employer's party must be escorted home and kept there by such escort, in violation of his or her personal privacy and liberties. Not so.

Marriott's arguments are derivative of each other and ignore the fact that it *created* the risk of harm at its party by allowing an employee to consume alcohol to the point of intoxication. Marriott could have lessened this risk in numerous ways such as having a policy prohibiting smuggled alcohol, enforcing its drink ticket policy, serving drinks for only a limited time period and serving food. Alternatively, it could have eliminated the risk by forbidding alcohol.

We concur with the observations of the *Childers's* court that alcohol abuse is foreseeable and extremely dangerous and innocent people are injured or killed "as a consequence of the negligence of those who have consumed alcohol at events that otherwise benefit a commercial enterprise. . . . We think that if a commercial enterprise chooses to allow its employees to consume alcoholic beverages for the benefit of the enterprise, fairness requires that the enterprise should bear the burden of injuries

15

proximately caused by the employees' consumption."  (*Childers*, *supra*, 190 Cal.App.3d at p. 810.)

Notably, our conclusion that the trial court erred in granting summary judgment in favor of Marriott does not impose respondeat superior liability on Marriott, it merely results in this question being resolved by the trier of fact.  Necessarily, the trier of fact will need to determine, based on the totality of the evidence presented, whether Landri's act of leaving his home shortly after arriving from the party to drive a fellow employee to that employee's home was "'so unusual or startling'" so as to render the car accident unforeseeable.  (*Perez*, *supra*, 41 Cal.3d at p. 968.)

Marriott cites two out-of-state cases, *S. Bell Tel. & Tel. Co. v. Altman* (1987) 183 Ga.App. 611 and *Mulvihill v. Union Oil Co.* (Alaska 1993) 859 P.2d 1310 (*Mulvihill*), to support its contention that respondeat superior liability ceases as soon as an intoxicated employee arrives home.  Georgia, however, follows the alternate view that the accident itself must occur at a time that the employee is acting within the scope of his or her employment.  (*Whelchel v. Laing Properties, Inc.* (1989) 190 Ga.App. 182, 186–187.)  Our research shows that Alaska courts have not yet expressly addressed whether the accident itself must occur at a time that the employee is acting within the scope of his or her employment or whether it is sufficient to show that the risk of harm occurred within the scope of employment.  Nonetheless, the *Mulvihill* opinion and other Alaska opinions suggest Alaska also follows the view that the accident itself must occur at a time that the employee is acting within the scope of his or her employment.  (*Luth v. Rogers & Babler Constr. Co.* (Alaska 1973) 507 P.2d 761, 764, fn. 14 [following Restatement (Second) of

16

Agency, section 228 (1958) factor that conduct must occur within authorized time and space limits]; *Mulvihill*, at pp. 1312–1313 [doctrine of respondeat superior liability does not encompass employee's drive to see his fiancé]; *Parnell v. Peak Oilfield Serv. Co.* (Alaska 2007) 174 P.3d 757, 769 [respondeat superior liability attached because employee was acting within scope of employment when the accident occurred].)

Finally, we note that Plaintiffs' complaint contains allegations of direct negligence by Marriott regarding how it hosted the party. Plaintiffs, however, appear to have abandoned this theory in their opposition to the summary judgment motion. While it is unclear whether Plaintiffs intend to pursue this theory on remand, it is appropriately addressed below and we express no opinion on this theory of recovery.

In summary, the questions whether Landri committed a negligent act, and whether that act was within the scope of his employment are for the trier of fact to decide. Based on the evidence in the record, a trier of fact could conclude that Landri negligently consumed alcohol to the point of intoxication while at the party. In assessing Landri's negligence, the trier of fact could consider, among other things, the disputed evidence regarding whether Landri drove home from the party and whether it was foreseeable he might attempt to drive later in the evening while still intoxicated. Foreseeability means that " 'in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' " (*Perez*, *supra*, 41 Cal.3d at p. 968.) Assuming the trier of fact found that Landri acted negligently, it could also conclude that Landri's negligent act occurred within the scope of Landri's employment because the party and

17

drinking of alcoholic beverages were a conceivable benefit to Marriott or were a customary incident to the employment relationship so as to render Landri's act of drinking to be within the scope of his employment. Additionally, the ultimate question of whether Landri's ingestion of alcohol at the party caused Plaintiffs' injury is for the trier of fact.

## DISPOSITION

The judgment is reversed. Plaintiffs are awarded their costs on appeal.

MCINTYRE, J.

WE CONCUR:

MCCONNELL, P. J.

BENKE, J.