Filed 12/20/18

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RAY DAVID MORENO,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>VISSER RANCH, INC., et al.,<br><br>  Defendants and Respondents. | F075822<br><br>(Super. Ct. No. VCU254522)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

Dordick Law Corporation and Gary A. Dordick for Plaintiff and Appellant.

Taylor Anderson, Kevin S. Taylor and Jorge A. Martinez for Defendants and Respondents.

-ooOoo-

Plaintiff was injured while a passenger in a pickup truck involved in a single-vehicle, rollover accident.  Plaintiff sued the driver (his father), the corporation that employed the driver, and an affiliated corporation that owned the vehicle.  Plaintiff alleged the driver was acting in the scope of his employment at the time of the accident and claimed the defendant corporations were vicariously liable under California's doctrine of respondeat superior.  The defendant corporations obtained summary adjudication of the respondeat superior claim on the ground that the driver, who was

returning home late in the evening after attending a family gathering, was not acting in the scope of his employment at the time of the accident.

Scope of employment is a question of fact. Here, the evidence shows defendants required the driver to be on call 24 hours a day, seven days a week to respond immediately to cell phone calls for repairs and maintenance needed at the ranches, farms and dairies operated by defendants. Also, there is conflicting evidence about whether the driver was required to use the company-owned vehicle, which contained tools and spare parts, *at all times* so he could respond quickly to call for repairs at defendants' various locations. Based on this evidence and other details about the driver's job, a reasonable trier of fact could find the driver was acting within the scope of his employment when the accident occurred.

We publish this decision because it is distinguishable from most other cases involving an employee's required use of a company-owned vehicle. Usually, those cases involve an employee who is required to use the vehicle only for the commute to and from work but is not required to use the vehicle while off work.[1] Here, a trier of fact reasonably could find the driver's use of the truck for personal travel after work was dictated by the employer's requirement. In such circumstances, the risk of the truck's involvement in an accident is a foreseeable risk that is attributable to the business enterprise under California's risks-of-the-enterprise principle, which is the primary justification for its respondeat superior doctrine. Consequently, responsibility for that risk is best allocated to the enterprise, which is able to spread the risk (and actually did so) by obtaining insurance.

---

[1] Also, a substantial number of those cases address accidents that occurred during the employee's travel to or from the workplace—circumstances governed by the going and coming rule and its exceptions. (See pt. I.A.3., *post*; CACI No. 3725 [going-and-coming rule, vehicle-use exception].) Here, the going and coming rule and its exceptions are not applicable because the accident occurred while the driver was returning home from a family gathering at his brother's home, not on the way to or from work.

We therefore reverse the judgment and remand for further proceedings.

## FACTS

Plaintiff Ray David Moreno was seriously injured on September 12, 2012, when the 2004 GMC Sierra pickup truck in which he was a passenger left the roadway, hit an embankment and rolled over. At the time, plaintiff was not wearing his seat belt. The truck was driven by plaintiff's father, Ernesto Moreno Lopez (Driver). They were traveling on I Street, a rural road owned and maintained by the County of Tulare. Unbeknownst to Driver, a section of I Street was under construction and a resurfacing of the roadway, which had begun earlier that day, was not completed when the accident occurred.

The defendants named in plaintiffs' lawsuit were Visser Ranch, Inc., a California corporation; Graceland Dairy, Inc., a California corporation;[2] the County of Tulare and its Resource Management Agency; the State of California and its Department of Transportation; General Motors Company; and Driver. For purposes of this opinion, Visser Ranch, Inc. and Graceland Dairy, Inc., collectively, are referred to as "defendants."

Driver was an employee of Visser Ranch, Inc., a company owned by John Visser. His supervisors or bosses were John Visser and Visser's son-in-law, Brian Schaap. Driver had been hired in September 2004 as a supervisor/manager and was required to work at virtually all of Visser's properties, which included multiple farms, ranches, and Graceland Dairy. These operations involved equipment that ran around the clock. When maintenance or repair issues arose, they would need to be addressed immediately to

---

[2] On February 23, 2015, defendants Visser Ranch, Inc. and Graceland Dairy, Inc. filed certificates of dissolution with the California Secretary of State. The date of filing of a certificate of dissolution (Corp. Code, § 1905) is the date a California corporation's "corporate existence shall cease." (Corp. Code, § 1905.1; see Corp. Code, § 1903 [proceedings for winding up corporation].)

3.

prevent the farm and dairy operations from being disrupted. Driver's duties included performing maintenance and repair work on the Visser properties, which he often performed alone. Driver's responsibilities also included transporting workers to various Visser properties where they would work.

Defendants provided Driver with an office at the property known as Visser Ranch, and he worked from 6:00 a.m. to 4:30 p.m. six days a week, with Sundays off. In addition, he was "on call" 24 hours a day, seven days a week, which meant he was expected to respond to any problems or issues that arose on any Visser property at any time of the day or night.

Driver was provided a house on one of the Visser properties, Graceland Dairy, where he lived with his family, including plaintiff. The distance between Driver's office at Visser Ranch and the home at Graceland Dairy was approximately eight miles. To facilitate Driver's ability to respond efficiently to repair and maintenance problems arising outside his usual daytime schedule, defendants provided Driver a cell phone and a pickup truck. The GMC truck that Driver was operating on the day of the accident was owned by Graceland Dairy, Inc. Driver kept a toolbox and spare parts in the GMC truck so he would have them available whenever he was contacted to respond to a maintenance or repair issue. When Driver was not working his regular shift, he used the GMC truck so he could respond quickly to work-related calls. Driver's use of the GMC truck while not performing his regular shift was part of his employment and benefited defendants because Driver could respond immediately to defendants' maintenance, repair and operational needs. This aspect of Driver's use of the GMC truck had been discussed by Driver and Schaap, with Schaap telling Driver that he was the lone exception to the defendants' policy that company vehicles were to be used for business purposes only.

On September 12, 2012, Driver left work at approximately 4:30 p.m., drove to his home at Graceland Dairy, loaded a grill into the GMC truck, and drove to his brother's house for a family gathering. None of defendant's other employees attended, or were

4.

aware of, the family gathering. At approximately 11:45 p.m., Driver got back into the GMC truck to return to his home at Graceland Dairy. Plaintiff rode along in the passenger seat. Driver followed a route that he had taken on many prior occasions. Driver lost control of the GMC truck while attempting to negotiate an S-curve in the roadway that was being resurfaced.

When the single-vehicle accident occurred, plaintiff was employed by Cream of the Crop, Ag Service, Inc. to perform services at the Graceland Dairy site, other Visser properties and various other unrelated farms in the area. Cream of the Crop was not owned or controlled by defendants. Driver's declaration, cited in defendants' undisputed statement of material facts, stated plaintiff was scheduled to perform work services at the Graceland Dairy site that night and he was driving plaintiff back to Graceland Dairy so that plaintiff could begin his work shift. Plaintiff would get to work by walking to the barn close to the house at Graceland Dairy.

## PROCEEDINGS

In April 2013, plaintiff filed a complaint for damages alleging a negligence cause of action against Driver, Visser Ranch, Inc., Graceland Dairy, Inc., and General Motors Company. The negligence cause of action asserted defendants were liable because (1) Graceland Dairy, Inc. owned the vehicle negligently operated by Driver, (2) Driver was acting in the course and scope of this employment with defendants at the time he lost control of the vehicle, and (3) defendants negligently failed to screen, train and supervise Driver.

In addition, plaintiff alleged a cause of action against the State of California and the County of Tulare based on the dangerous condition of the public property where Driver lost control of the vehicle. Plaintiff also alleged causes of action against General Motors Company for strict liability, negligent product liability, and breach of warranty.

In June 2015, defendants filed a motion for summary adjudication addressing the claims that they were vicariously liable and that they had negligently entrusted the

5.

vehicle to Driver. Plaintiff opposed the motion, asserting the existence of disputed facts and arguing the scope of Driver's employment was a factual question for the jury.

In addition, codefendants Driver and the County of Tulare filed separate oppositions to defendants' motion for summary adjudication. Driver supported his opposition by submitting a declaration stating (1) plaintiff was employed by Cream of the Crop, Ag Service, Inc. to perform work services at the Graceland Dairy site and other Visser properties; (2) the night of the incident, plaintiff was scheduled to perform work at Graceland Dairy; and (3) Driver "was driving him back to the Graceland Dairy site so that he could begin his work shift." The final paragraph of Driver's declaration stated: "On the night of the incident, when I was driving [plaintiff] from my brother's home to the Graceland Dairy site, I was on 24/7 call and I was acting within the course and scope of my duties as a Visser employee."

In September 2015, following a hearing on the motion for summary adjudication, the court filed an order granting defendants' motion for summary adjudication "only on liability arising from the theories of vicarious liability/respondeat superior and negligent entrustment." The court overruled all of the evidentiary objections raised by the parties because the objections were not submitted in accordance with the requirements of the California Rules of Court. As to the negligent entrustment theory of liability, the court noted only the County of Tulare had opposed the summary adjudication of that claim and its factual arguments were insufficient to require the theory be presented to a jury. As to the scope of employment issue, the court stated:

> "[T]he undisputed deposition testimony reveals [plaintiff] (1) lived at the family home located at Graceland Dairy; (2) was not employed by Visser Ranch; (3) did not have to be at work at any particular time; (4) was planning to go to work whenever he got home; and (5) walked to the barn close to his house at Graceland Dairy to get to work. [Citation.] As such, the deposition testimony does not support the opposing parties' argument [that Driver] was transporting [plaintiff] for purposes related to Visser Ranch's business activities."

6.

The court rejected Driver's declaration to the extent that it contradicted his deposition testimony and summarized the evidence presented by stating Driver "engaged in a distinctly personal event when he traveled to the family outing." The court determined a reasonable trier of fact could not find Driver "was acting in furtherance of Visser Ranch's business activities by going home with his son after the family event. Moreover, where the purpose was beyond the scope of employment, [plaintiff's] plans to go to work after he arrived home did not transform the trip into company business." The court concluded Driver was engaged in a purely personal pursuit with his son when the accident happened, and inferences to the contrary were not reasonable.

In May 2017, the trial court entered a judgment as to defendants based on (1) the August 2015 order that granted them summary adjudication of the claims of vicarious liability and negligent entrustment and (2) the remaining claim that defendants had statutory liability arising out of the ownership of the vehicle. The judgment stated plaintiff had reached a settlement in excess of $15,000 with Driver and the settlement satisfied the $15,000 statutory liability based on ownership of the vehicle. As a result, judgment was entered in favor of defendants and against plaintiff. Plaintiff timely appealed from the judgment.

## DISCUSSION

### I. BASIC LEGAL PRINCIPLES

#### A. Respondeat Superior

The doctrine of respondeat superior holds an employer liable for torts of its employees committed within the scope of their employment. (*Halliburton Energy Services, Inc. v. Department of Transportation* (2013) 220 Cal.App.4th 87, 93–94 (*Halliburton*); Rest.3d Agency, § 7.07, subd. (1), p. 198; Rest.2d Agency, § 219, subd. (1); see Civ. Code, § 2338 ["principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency"].) A plaintiff suing an

7.

employer under the doctrine must prove the person who committed the tort was acting within the scope of his or her employment. (*Halliburton, supra,* at p. 94.)

### 1. Policy Considerations

Conceptually, California's doctrine of respondeat superior is justified by public policy considerations relating to the allocation of risk. (*Hinman v. Westinghouse Electric Co.* (1970) 2 Cal.3d 956, 959; *Halliburton*, *supra*, 220 Cal.App.4th at p. 94.) "'The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise which will, on the basis of past experience, involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.' (Prosser, Law of Torts (3d ed. 1964), p. 471; fns. omitted.)" (*Hinman*, *supra*, at pp. 959–960.) In other words, an employer is vicariously liable for the risks that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer—that is, "the risks inherent in or created by the enterprise." (*Id.* at p. 960; see Comment, *Pouring New Wine into an Old Bottle: A Recommendation for Determining Liability of an Employer Under Respondeat Superior* (1994) 39 S.D. L.Rev. 570, 583–585 ["California Supreme Court was the first court to manifestly apply the enterprise theory" in developing a scope of employment test] (*Pouring New Wine*).) The risks-of-the-enterprise principle is the main justification supporting California's respondeat superior doctrine. (*Marsh v. Tilley Steel Co.* (1980) 26 Cal.3d 486, 494.)[3]

---

[3] In contrast, most states apply a control theory to determine the scope of employment for purposes of respondeat superior. (*Pouring New Wine*, *supra*, 39 S.D. L.Rev. at p. 578.) This is the approach adopted in subdivision (2) of section 7.07 of the

## 2. Tests for Scope of Employment

California courts have used different language when phrasing the test for scope of employment under the respondeat superior doctrine. (See Sources and Authorities for CACI No. 3720 [scope of employment].) Under one test, the employer is liable if the activities that caused the employee to become an instrument of danger to others were undertaken with the employer's permission and were of some benefit to the employer, or in the absence of proof of benefit, the activities constituted a customary incident of employment. (*Purton v. Marriot Internat., Inc.* (2013) 218 Cal.App.4th 499, 509 (*Purton*).)

Under the test described by this court in *Halliburton*, an employee's conduct is within the scope of his or her employment if (1) the act performed was either required or incident to his duties or (2) the employee's misconduct could be reasonably foreseen by the employer in any event. (*Halliburton*, *supra*, 220 Cal.App.4th at p. 94.) In this test, foreseeability means that in the context of the particular enterprise, an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among the costs of the employer's business. (*Id*. at p. 95.) In *Halliburton*, we acknowledged the rationale that "'[t]he employer is liable not because the employer has control over the employee or is in some way at fault, but because the employer's enterprise creates inevitable risks as part of doing business.'" (*Id.* at p. 94, quoting *Bailey v. Filco, Inc.* (1996) 48 Cal.App.4th 1552, 1559.)

## 3. The "Going and Coming" Rule

A specific principle, along with many exceptions, has been developed to address whether an employee is acting within the scope of employment when involved in a vehicular accident on the way to or from work. Called the "going and coming" rule, this principle holds that an employee going to or from work ordinarily is considered outside

---

Restatement Third of Agency, which was published in 2006. (Cf. Rest.2d Agency, §§ 228, 229.)

the scope of employment and, therefore, the employer is not liable for torts committed during the commute. (*Halliburton*, *supra*, 220 Cal.App.4th at pp. 95–96.) The going and coming rule is not applicable to this case because Driver was not commuting to or from work at the time of the accident. (See generally, CACI No. 3725 [going-and-coming rule, vehicle-use exception].) Consequently, this opinion does not describe the rule and its many exceptions in the detail provided in other decisions published by this court. (See *Pierson v. Helmerich & Payne Internat. Drilling Co.* (2016) 4 Cal.App.5th 608, 618–624 [overview of going and coming rule]; *Lantz v. Workers' Comp. Appeals Bd.* (2014) 226 Cal.App.4th 298, 308–311 [going and coming rule and special mission exception]; *Halliburton*, *supra*, at pp. 95–96 [going and coming rule and incidental benefit exception].)

B.     Standard of Review for Summary Judgment

Appellate courts independently review an order granting summary judgment or summary adjudication. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 452, fn. 3 [review of a grant of summary judgment or summary adjudication is de novo]; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).) In performing this independent review, appellate courts apply the same three-step analysis as the trial court. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1602 (*Brantley*).)

The first step requires the court to identify the issues framed by the pleadings. (*Brantley*, *supra*, 42 Cal.App.4th at p. 1602.) Here, plaintiff's complaint sought to impose vicarious liability on defendants under a respondeat superior theory by alleging Driver was operating the GMC truck while in the course and scope of his employment with defendants.

The second step requires the court to determine whether the moving party has satisfied its burden of establishing facts that justify a judgment in its favor. (*Brantley*, *supra*, 42 Cal.App.4th at p. 1602.) Here, defendants attempted to establish that Driver

10.

was not acting in the scope or course of employment by setting forth facts and presenting evidence that showed Driver was engaged in personal activities when the GMC truck rolled and injured plaintiff.

If the moving party has carried its initial burden, the court proceeds to the third step and decides whether the opposing party has demonstrated the existence of a triable issue of material fact. (*Brantley*, *supra*, 42 Cal.App.4th at p. 1602.) Here, plaintiff contends (1) the question of scope of employment ordinarily is one of fact for the jury to decide and (2) a jury reasonably could infer Driver was in the scope of his employment because he was on call 24 hours a day, seven days a week and, while on call, he was *required* to drive the truck and keep his tools handy.

During the second and third steps of the analysis, an appellate court considers the evidence in a light favorable to the nonmoving party, liberally construing that party's evidentiary submission while strictly scrutinizing the moving party's own showing and resolving any evidentiary doubts or ambiguities in the nonmoving party's favor. (*Saelzler*, *supra*, 25 Cal.4th at pp. 768–769.) Furthermore, an appellate court's evaluation of the evidence presented with motions for summary judgment or adjudication does not include evidence to which objections have been made and properly sustained. (Code Civ. Proc., § 437c, subd. (c).) Here, the trial court overruled all of the evidentiary objections presented by the parties because those objections were not presented in the manner required by the California Rules of Court. Accordingly, our review considers all of the evidence presented.

II.    SCOPE OF EMPLOYMENT

A.    <u>Permission and Benefit Test</u>

Under the test for scope of employment set forth in *Purton*, the employer is liable if the activities that caused the employee to become an instrument of danger to others (1)

11.

were undertaken with the employer's permission and (2) were of some benefit to the employer. (*Purton*, *supra*, 218 Cal.App.4th at p. 509.)

Here, the activity that caused Driver to become an instrument of danger to others was driving the GMC truck. Plaintiff contends the first element of the test—employer permission—was satisfied based on Driver's declaration. Paragraph 24 of Driver's August 2015 declaration stated:

> "Visser required me to have the Truck available for immediate use at all times. My use of the Truck on a 24/7 basis was not simply permissive or a personal favor to me, but rather it was a part of my job for Visser's benefit so that I could respond immediately to Visser's maintenance, repair, and operation[al] needs."

In addition, Driver stated that his supervisors were aware that he had the GMC truck with him at all times. Viewing this evidence in the light most favorable to plaintiff, we conclude it is sufficient to establish the first element of the *Purton* test. Specifically, Driver's use of the GMC truck for personal trips, including traveling to and from a family gathering at his brother's home, was undertaken with defendants' permission.

As to the second element of some benefit to the employer, the parties disagree on whether Driver's use of the GMC truck for a personal trip benefited defendants. Plaintiff's theory of benefit asserts that defendants benefited from requiring Driver to use the GMC truck on personal trips because doing so allowed Driver to respond directly to a phone call that repairs were required at one of defendants' sites. Driver kept tools and spare parts in the GMC truck and, as a result, could go immediately to the location where the repairs were needed. Plaintiff also notes that defendants received the benefit of Driver returning plaintiff to Graceland Dairy to begin his shift. In contrast, defendants and the trial court viewed Driver as being "engaged in a purely personal pursuit with his son when the accident happened."

Based on the evidence presented, we conclude there is a triable issue of material fact as to the second element of the *Purton* test—that is, whether Driver's use of the

12.

GMC truck for a personal trip was of some benefit to defendants. In *Halliburton*, this court recognized the theory that the employer benefits when a vehicle is available to the employee during off-duty hours in case it is needed for emergency business trips. (*Halliburton*, *supra*, 220 Cal.App.4th at p. 96.) A similar conclusion as to employer benefit was reached in *Snodgrass v. United States* (7th Cir. 1992) 957 F.2d 482 (*Snodgrass*). In that case, an FBI agent was authorized to use his government car to travel between work and home. (*Id*. at p. 484.) The court addressed whether the employer benefited from this arrangement by noting the car was equipped with a radio, the agent often responded to emergency calls at night directly from his home using the FBI car, and the FBI policy authorized agents to drive government owned cars home, provided they followed an expeditious route. (*Id*. at pp. 485–486.) The court stated the agent's "driving an FBI car provided at least as great a benefit to the FBI" as the benefit provided to an employer in an Illinois case involving an automobile dealership that supplied several of its employees with an automobile for performing company business and for personal use. (*Id*. at p. 486.) Specifically, the court stated the agent "had a greater need to respond to FBI emergencies than a car salesman would to customer service needs." (*Ibid*.)[4]

In *Lazar v. Thermal Equipment Corp.* (1983) 148 Cal.App.3d 458, the court concluded the employee was acting within the scope of his employment while driving the employer's truck on a personal errand on his way home from work. (*Id*. at p. 460.) The court stated "an object of the commute was to transport the [company owned] vehicle to [the employee's] home where it would be at the ready for business use in case [the

---

**4**    Ultimately, the Seventh Circuit concluded the FBI agent was not acting in the scope of his employment at the time of the collision with the plaintiff because under Illinois law the agent had left the scope of employment when he went to a bar for four to five hours (i.e., an activity that qualified as a "frolic" under Illinois law) before resuming his trip home. (*Snodgrass*, *supra*, 957 F.2d at p. 486.)

employee] received emergency after-hours calls for repair from the employer's customers." (*Id*. at p. 463.)  Based on the approach to employer benefits taken in the foregoing case, we conclude a trier of fact reasonably could find that defendants derived some benefit from requiring Driver to use the GMC truck while on personal trips because this requirement increased his ability to respond quickly to calls for repairs outside his regular hours.  In addition, plaintiff asserted as an undisputed material fact that Driver's responsibilities during his regular daytime shift, and when he was on call, included transporting workers to various Visser properties so that they could work.  If a jury were to find this assertion about Driver's responsibilities as true and were to find Driver was taking plaintiff to Graceland Dairy so plaintiff could begin his shift, the jury reasonably could infer that defendants received another type of benefit from Driver's trip from his brother's home to Graceland Dairy.  (Code Civ. Proc., § 437c, subd. (c) [conflicting inferences].)

Consequently, defendants will be entitled to summary adjudication of the respondeat superior claim against them only if they show the *Purton* test is subject to an exception that can be applied as a matter of law at this stage of the proceeding.  We consider the existence of such an exception after discussing the application of a second test for the scope of employment.

B.     *Halliburton* Test

The test for scope of employment described by this court in *Halliburton* can be satisfied in multiple ways.  An employee's conduct is within the scope of his employment if the act performed was (1) required or (2) incident to his duties.  (*Halliburton*, *supra*, 220 Cal.App.4th at p. 94.)  When neither of these elements is satisfied, the employee's misconduct is regarded as within the scope of employment if it could be reasonably foreseen by the employer.  (*Ibid*.)  An example of this type of foreseeability occurs when an employer requires an employee to drive *his own vehicle* to and from its office so the

vehicle is available for company business during the workday.  In such a situation, "'accidents on the way to or from the office are statistically certain to occur eventually, and, the business enterprise having required the driving to and from work, the risk of such accidents are risks incident to the business enterprise.'" (*Id*. at p. 96.)

### 1.    *Required Acts*

Whether the act performed by Driver was required turns on how that act is described or characterized.  For instance, Driver was not required by defendants to attend the family gathering.  Consequently, if the relevant conduct is described as returning from a family gathering, that conduct was not an act required by Driver's employer.

Alternatively, if the relevant conduct is described as operating the GMC truck while on a personal trip, there is a triable issue of fact as to whether that conduct was required by his employer.  Plaintiff's evidence includes Driver's declaration, which states his use of the GMC truck at all times was a part of his job, was not permissive, and was not a personal favor.  Thus, Driver's declaration is evidence that Driver was engaging in conduct required by his employer at the time of the accident.

At a minimum, we conclude the different ways to characterize Driver's activity presents a question of fact that cannot be decided in defendants' favor at this stage of the proceedings.  This conclusion is compatible with the general principle addressing employee conduct that serves a dual purpose—a purpose of the employer and a purpose of the employee.  Section 236 of the Restatement Second of Agency sets forth this principle as follows:  "Conduct may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person."  This principle applies "not only as to the act done but as to the manner of doing it."  (Rest.2d Agency, § 236, com. a.)  Here, the manner of doing the act—that is, traveling to and from a family gathering—can be characterized as driving the GMC truck in accordance with

defendants' requirements. Thus, a jury reasonably could find driving the GMC truck served a dual purpose and was conduct within the scope of Driver's employment.

### 2.      *Foreseeable Negligent Driving*

Under the alternate prong of the test described in *Halliburton*, the scope of employment extends to employee misconduct that could be reasonably foreseen by the employer. (*Halliburton*, *supra*, 220 Cal.App.4th at p. 94.) Foreseeability means that, in the context of defendants' enterprise, Driver's conduct was not so unusual or startling that it would seem unfair to include the loss resulting from it among the other costs of the employer's business. (*Ibid*.) Here, Driver was required to use the company owned GMC truck for personal travel and, because vehicular accidents "are statistically certain to occur eventually" (*id*. at p. 96), the foreseeability test is met.

California's risks-of-the-enterprise principle places responsibility for such foreseeable losses on the employer because the employer (compared to the plaintiff) "'is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.'" (*Hinman*, *supra*, 2 Cal.3d at p. 959; see *State ex rel. Dept. of California Highway Patrol v. Superior Court* (2015) 60 Cal.4th 1002, 1015 [principal justification of respondeat superior doctrine is that employer may spread risk through insurance and carry the cost as part of the cost of doing business].) Here, it appears that defendants acted in accordance with the risks-of-the-enterprise principle because the GMC truck was insured under an auto liability policy purchased by Visser.[5] Thus, defendants themselves may have recognized (i.e., foreseen) and insured against the risk of a traffic accident involving the vehicle they required Driver to use for personal transportation.

---

[5]      During his deposition, Visser answered "No" when asked if he was trying to go out of his way to prevent plaintiff from collecting under the insurance policy. The record does not show whether Driver was named in the policy as an additional insured and does not show if the insurance coverage was limited to business activities.

Accordingly, we conclude a trier of fact reasonably could find Driver's personal use of the GMC truck was foreseeable under that prong of the scope of employment test described in *Halliburton*. Consequently, as with the *Purton* test, defendants will prevail on their motion for summary adjudication as to the respondeat superior claim only if they show the scope of employment tests are subject to an exception that can be applied as a matter of law to the evidence presented in this case.

C.    Purely Personal Activity

In *Halliburton*, we did not decide whether a jury reasonably could find the employee was acting in the scope of employment while using a company truck to commute to a work location based on the theory that employee's use of the truck during his commute provided an incidental benefit to the employer. (*Halliburton*, *supra*, 220 Cal.App.4th at p. 96.) We concluded that, even if an incidental benefit was provided, the undisputed facts established that the employee was engaged in purely personal business at the time of the accident and, therefore, was not acting within the scope of his employment for purposes of respondeat superior liability. (*Id.* at pp. 96–97.) This approach necessarily holds that even if a prong of the scope of employment test described in that decision had been established, an exception to the test existed for purely personal business. Consequently, here we consider whether the undisputed material facts establish Driver was not acting in the scope of his employment with defendants because he was engaged in purely personal business at the time the GMC truck left the roadway and overturned. Purely personal business also has been described as "'an end or purpose exclusively and individually [the employee's] own.'" (*Id.* at p. 102.)

Contrary to defendants' arguments and the determination of the trial court, we conclude there exists a triable issue of material fact as to whether Driver was engaged in purely personal business at the time of the accident. Here, (1) Driver was operating a vehicle owned by his employer; (2) the vehicle held tools and spare parts used by Driver

17.

in performing repair and maintenance work for employer; (3) Driver was on call 24 hours a day, seven days a week to perform repairs at the employer's various business sites; (4) Driver was required to use the vehicle at all times so when he received a repair call outside his regular work hours he could respond quickly; (5) the employer paid for the fuel used by the vehicle and for the auto liability insurance policy; (6) Driver was not subject to the employer's policy restricting use of company vehicles to company business; and (7) Driver was returning plaintiff to Graceland Dairy so he could begin his work shift. The evidence also shows Driver and plaintiff, his son, were returning home from a family gathering at Driver's brother's home when the accident occurred. The employer was not aware of the gathering and none of defendants' other employees attended the gathering.

These facts show Driver was on personal business when the accident occurred, but they do not establish as a matter of law that he was engaged in *purely* personal business. The requirements of Driver's job dictated his choice of transportation to and from the gathering. (Cf. *State Farm Mut. Auto Ins. Co. v. Haight* (1988) 205 Cal.App.3d 223, 241–242 [use of company van was an *express* condition of employment].) This fact distinguishes this case from *Halliburton*, where the employee was not *required* to use the company truck for his personal business and had not gotten permission to use the company truck for the personal trip in question. It also distinguishes this case from *Le Elder v. Rice* (1994) 21 Cal.App.4th 1604, which involved an employee who was required to be available 24 hours a day, seven days a week. (*Id*. at p. 1607.) In *Le Elder*, the employee was using his personal vehicle and was returning home after dropping his children at school when he struck the plaintiff on her bicycle. (*Id*. at pp. 1606–1607.) The court concluded the employee was not acting in the scope of his employment at the time of the accident, but, unlike Driver, the employee was not provided with a company owned vehicle and required to use that vehicle all of the time.

Finally, our conclusion that the issue of purely personal business cannot be decided in defendants' favor at this stage of the proceedings is congruent with the dual purpose principle mentioned earlier. That principle acknowledges that "[t]he fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment." (Rest.2d Agency, § 236, com. b.) Here, even if Driver's predominant reasons for attending the gathering and driving home with his son were personal, there was a secondary business purpose underlying the use of the GMC truck. Accordingly, we cannot conclude as a matter of law that Driver was engaged in purely personal business when the accident occurred. It follows that the motion for summary adjudication of the respondeat superior claim should have been denied.

## DISPOSITION

The judgment is reversed. Plaintiff shall recover his costs on appeal.

_____

FRANSON, J.

WE CONCUR:


_____

LEVY, Acting P.J.


_____

DESANTOS, J.

19.