Filed 12/31/14  Doe v. Wells Fargo Bank CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>        Defendants and Respondents. | A137502<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-11-509098) |

Jane Doe asserts that she was sexually assaulted by Natasha Gretz, her supervisor at Wells Fargo[1], and Alex Folas, Gretz's boyfriend and a Wells Fargo branch manager. The alleged assault followed a night of drinking that began at a Wells Fargo holiday party, continued at a nearby bar, and ended at Folas's home.  Doe sued Wells Fargo for assault, battery, and sexual battery under a theory of respondeat superior; sexual harassment under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.); and failure to prevent harassment or take appropriate corrective action in violation of the FEHA; among other things.  The trial court granted Wells Fargo's motion for summary judgment on these claims, and subsequently denied Doe's motion for a new trial.

Doe appeals, arguing: (1) Wells Fargo should be held vicariously liable for her tort claims because Gretz and Folas's assault was a foreseeable result of the alcohol

_____

[1] The parties do not distinguish between the two respondents, Wells Fargo Bank & Company and Wells Fargo Bank, N.A.  We refer to them collectively as Wells Fargo.

1

consumed at the holiday party; (2) Wells Fargo is strictly liable under the FEHA because the sexual harassment took place in a work-related context; and (3) triable issues of fact exist as to whether Wells Fargo failed to prevent harassment or take appropriate corrective action. We disagree and affirm.

I.

BACKGROUND

*A.    Facts*

Jane Doe worked as a bank teller at the Wells Fargo branch in Orinda, California from March 2008 through sometime in 2010. As Service Manager of the branch, Natasha Gretz was Doe's supervisor. Gretz reported to Branch Manager Carole Mathisen. Alex Folas, Gretz's boyfriend, was Branch Manager of a Wells Fargo branch in Clayton, California.

On the evening of Saturday, December 19, 2009, the Orinda branch held a holiday party for its employees at the Greenery Restaurant. About 12 to 16 employees and guests attended, including Doe, Gretz, Folas, and Mathisen, who had helped plan the event. Mathisen paid for the guests' drinks and dinner using her Wells Fargo budget, and she did not attempt to limit alcohol consumption. During the party, Doe danced, sang karaoke, and drank.

At around 9:30 p.m., Mathisen settled the bill and said goodbye to the guests. One of the guests remembered hearing Mathisen say that the party was over and the guests were on their own. By this point, Doe was "buzzed," but Mathisen did not know how much she had drunk. Mathisen offered Doe a ride home, but Doe declined the offer "because the party was still going on." Before leaving, Mathisen told Gretz "make sure [Doe] gets home safely." Several party guests left before Mathisen.

After Mathisen left, Doe, Gretz, Folas, and some of the other party guests remained at the bar. Doe continued to drink, and remembers having a total of five to eight alcoholic beverages over the course of the evening at Greenery. Doe also danced

2

while others sang karaoke.  At one point, Gretz danced with Doe in an "overly sexual way."  This upset Doe, and she tried to distance herself from Gretz.

Sometime before midnight, Gretz and Folas left for a nearby bar called Artie's. By this point, Gretz was admittedly intoxicated "on some level."  The parties agree that Gretz and Folas went to Artie's to meet a few of Folas's high school friends, but they dispute whether Gretz or Folas invited Doe to join.  Doe does not recall seeing either Gretz or Folas leave for Artie's , and she does not remember if Gretz or Folas personally invited her.  However, she asserts that there was a plan for some of the remaining guests to move from Greenery to Artie's to continue the party, and that group left for Artie's around the same time.

Around midnight, Doe and two to three other Wells Fargo employees, including Todd Saran and Richard Toletti, went to Artie's to join Gretz and Folas.  Before departing Greenery, Saran offered Doe a ride home.  Doe now claims that she refused the offer because Saran was too drunk to drive, but at her deposition she stated that she wanted to go to Artie's to spend more time with her co-workers.  It is undisputed that Toletti drove both Doe and Saran to Artie's.

At Artie's, Gretz and Saran bought drinks for Doe, and she began to black out. Doe had no reason to believe that Wells Fargo paid for any of these drinks.  Doe recalls Gretz stating that they were going to do body shots.[2]  Doe also recalls going along with the body shots because she did not want to offend Gretz.  Eventually, Gretz said that Doe was going home with her, and that she would take Doe home the next morning.  Folas drove Doe and Gretz to his home.  All three of them were drunk.

After arriving at Folas's house, Folas prepared cocktails and Folas, Gretz, and Doe continued to drink.  Doe then blacked out, and she recalls only portions of what followed. Specifically, she remembers finding herself naked in a bedroom with Gretz and Folas,

---

[2] A body shot involves licking salt off of another person, taking a shot of tequila, and then taking a lime out of the other person's mouth.

telling them that she was not willing to "do this," Gretz saying that it was "okay" because she had done this before, having the sensation that she could not move while Gretz performed oral sex on her, Gretz pushing her head into Folas's groin, and waking up naked between Gretz and Folas. Gretz and Folas later asserted that Doe consented to and was actively involved in the sex acts. Doe does not remember much of the evening, but denies she gave consent.

The next morning, Gretz drove Doe home. Later that day Doe noticed scratches and bruises on her legs. A forensic medical exam of Doe performed soon thereafter revealed evidence of non-consensual intercourse.

On Monday, December 21, 2009, Doe reported Gretz and Folas to Martha Niland in Wells Fargo's human resources department. Niland interviewed Gretz and Folas the following day. They were immediately placed on administrative leave but reinstated two days later. On or about January 29, 2010, Wells Fargo concluded its investigation, finding that the incident did not involve conduct sanctioned by Wells Fargo or related to the workplace. In March 2011, Gretz and Folas admitted that they lied during the investigation and confessed that they engaged in sexual activity with Doe. Wells Fargo immediately terminated their employment.

### B.    *Procedural History*

Doe sued Wells Fargo, Gretz, and Folas. Wells Fargo moved for summary judgment on all claims asserted against it, including (1) assault, battery, and sexual battery; (2) sexual harassment in violation of the FEHA, and (3) failure to prevent harassment or take corrective action in violation of the FEHA.

The trial court granted summary judgment in favor of Wells Fargo on all three issues. The court reasoned that the assault and sexual harassment claims were without merit "because they are premised on actions taken by [Gretz and Folas] that they performed outside the course and scope of their employment with Wells Fargo." The court found that Doe's claims for failure to prevent harassment and take corrective action

4

lacked merit because Wells Fargo had an anti-harassment policy, and because failure to take corrective action was not a cognizable claim under the FEHA.

Doe subsequently moved for a new trial, arguing that the trial court had improperly resolved triable issues of fact on summary judgment. The motion was denied. The trial court held that the fundamental problem with Doe's case is that the tortious actions "occurred after the work-related context, a party at the Greenery, had terminated; it occurred after a gathering at . . . (Artie's) that some of the Well Fargo employees left for [*sic*] from the Greenery. There is no objective evidence of any coercion on the part of Doe's supervisor to leave for Artie's [citation], and Doe could have made a variety of alternative arrangements. While the " 'plan' " might well have been to go to Artie's and many of the employees did so, this is not evidence that Doe was compelled to follow the plan nor that it was a supervisor's plan."

II.

DISCUSSON

*A.      Standard of Review*

We review the trial's court's decision to grant Wells Fargo's motion for summary judgment de novo. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.) Summary judgment must be granted if all the papers and affidavits submitted, together with "all inferences reasonably deducible from the evidence" and uncontradicted by other inferences or evidence, show that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) Where, as here, the defendant is the moving party, he or she may meet the burden of showing that a cause of action has no merit by proving that one or more elements of the cause of action cannot be established. (See *id.*, § 437c, subd. (o)(1).) Once the defendant has met that burden, the burden shifts to the plaintiff to show the existence of a triable issue of material fact as to that cause of action. (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 583.) On appeal, "[w]e may consider only

those facts which were before the trial court, and disregard any new factual allegations made for the first time on appeal." (*Sangster v. Paetkau*, *supra*, 68 Cal.App.4th at p. 163.)

### B.    *Vicarious Liability*

Doe argues that the trial court erred in granting summary judgment in favor of Wells Fargo on her claims for assault, battery, and sexual battery.  She contends that Wells Fargo should be held vicariously liable for Gretz and Folas's intentional torts under the doctrine of respondeat superior.  Wells Fargo responds that vicarious liability is barred because the assault did not fall within Gretz and Folas's scope of employment, and the assault was not a foreseeable consequence of the holiday party.  We agree with Wells Fargo.

"Under the doctrine of respondeat superior, an employer may be held vicariously liable for the torts committed by an employee within the scope of employment." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208 (*Mary M.*).)  "Accordingly, the employer's liability extends beyond his actual or possible control of the employee to include risks inherent in or created by the enterprise." (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968.)  In this context, the scope of employment is interpreted broadly and may include acts performed while the employee is not engaged in the ultimate object of employment and acts necessary to the convenience, health, and welfare of the employee while at work.  (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004.)  A risk may be inherent in an enterprise where it is a generally foreseeable consequence of the enterprise's activities.  (*Rodgers v. Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 618.)  In the respondeat superior context, foreseeability merely means that "an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." (*Id.* at p. 619.)

6

An employer's vicarious liability is not limited to the negligent acts of its employees. "[A]n employee's willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296–297 (*Lisa M*).) In such cases, vicarious liability attaches where the intentional tort is an outgrowth of the employee's work, and the employment predictably creates the risk employees will commit intentional torts of the type for which liability is sought. (*Id.* at p. 299.) The employer is not liable where the employee inflicts an injury out of personal malice, not engendered by the employment. (*Carr. v. Wm. C. Crowell Co.* (1946) 28 Cal.2d 652, 656.) However, the plaintiff need not show that the employee intended to benefit or further the interest of the employer in carrying out the intentional tort, or that the tortious conduct was authorized by the employer. (*Fields v. Sanders* (1947) 29 Cal.2d 834, 839.)

The same standards for vicarious liability apply to sexual assaults. (*Lisa M.*, *supra*, 12 Cal.4th. at p. 300.) Nevertheless, California courts have rarely found employers vicariously liable in this context since the risk of sexual assault is not typical of or broadly incidental to most professions. (See *M.P. v. City of Sacramento* (2009) 177 Cal.App.4th 121, 131–133.) For example, in *Lisa M.*, our Supreme Court rejected a claim that a hospital was vicariously liability for the molestation of a patient by an ultrasound technician. (12 Cal.4th at p. 294.) The court reasoned that the technician's personal motivations were not a result of his workplace responsibilities, and that the assault was not a foreseeable consequence of the technician's physical contact with the patient.[3] (*Id.* at pp. 302–303.) Not all vicarious liability claims have been rejected in the

[3] Other cases finding no vicarious liability for sexual assault include: *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 441 [school district not liable for teacher's molestation of student]; *Jeffrey E. v. Central Baptist Church* (1988) 197 Cal.App.3d 718, 723–724 [church not liable for teacher's molestation of Sunday school student]; *Farmers Ins. Group v. County of Santa Clara*, *supra*, 11 Cal.4th at p. 997 [Tort

7

sexual assault context. In *Mary M.*, *supra*, 54 Cal.3d at page 207, the Supreme Court found a city vicariously liable where a police officer raped a woman he had detained on a traffic stop. However, that decision "flow[e]d from the unique authority vested in police officers" (*id.* at p. 218, fn. 11), and its application has been questioned in other contexts (see *M.P. v. City of Sacramento*, *supra*, 177 Cal.App.4th at pp. 131–133).

Doe does not argue that the alleged sexual assault arose out of Gretz or Folas's regular duties or authority at Wells Fargo. Instead, she argues that it was a foreseeable result of the alcohol they consumed at the Wells Fargo holiday party. As she points out, employers who furnish alcohol to their employees can be held vicariously liable for the employees' tortious conduct. For example, in *Childers v. Shasta Livestock Auction Yard, Inc.* (1987) 190 Cal.App.3d 792, 799–800, the court held an auction yard vicariously liable when its employee drank hard liquor and beer on the premises and then ran her truck off the road killing herself and injuring the plaintiff. The court found that the drinking was within the scope of employment because the yard foreman had instructed the employee to "have a beer," and the yard regularly provided its employees and customers with alcohol. (*Id.* at pp. 805–806.) More recently, in *Purton v. Marriott Internat., Inc.* (2013) 218 Cal.App.4th 499, 502–503 (*Purton*), the court held that there was a triable issue as to whether a hotel was liable when its employee struck another driver after becoming intoxicated at the hotel's holiday party. Although the accident occurred after the employee arrived home safely and then decided to get back on the road, the court found that a jury could find he had become an "instrumentality of danger" at the party with the hotel's permission. (*Id.* at pp. 504, 509–510.) The court stated that

Claims Act did not require county to indemnify sheriff against claims for sexual harassment because harassment was not within the scope of employment]; *Myers v. Trendwest Resorts, Inc.* (2007) 148 Cal.App.4th 1403, 1425–1428 (*Myers*) [employer not liable in tort for supervisor's sexual harassment, even though it was liable under FEHA]; *Alma W. v. Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 144 [school district not vicariously liable for janitor's rape of a student].

8

"the employer's potential liability under these circumstances continues until the risk that was created within the scope of the employee's employment dissipates." (*Id.* at p. 511.)

Here, Doe essentially argues that the alcohol served at the Wells Fargo holiday party caused Gretz and Folas to become instrumentalities of danger, and that the danger manifested several hours later when Gretz and Folas allegedly sexually assaulted Doe at Folas's home. We find that the causal chain is too long and attenuated to support a finding of vicarious liability. Only a portion of the alcohol consumed by Gretz and Folas on the night in question was provided or authorized by Wells Fargo. At around 9:30 p.m., Mathisen closed out Wells Fargo's tab at Greenery, offered Doe a ride home, and informed at least one guest that the party was over. Doe, Gretz, and Folas continued to drink at Greenery until around midnight. Even if the Wells Fargo holiday party continued at Greenery during this period, Doe, Gretz, and Folas subsequently drank at Artie's and then at Folas's home. This additional alcohol consumption broke the causal chain.

These facts are distinguishable from *Purton*, *supra*, 218 Cal.App.4th 499, where the employee drank exclusively at his employer's holiday party. Though the employee crashed his car into the plaintiff sometime after the holiday party concluded, there was no intervening alcohol consumption to thwart causation. Doe argues that there are triable issues as to whether enough alcohol was consumed at the Wells Fargo holiday party to create a risk of the danger that eventually followed and whether subsequent alcohol consumption played any role in her injury. We disagree. The record reflects that several drinks were consumed after Gretz, Folas, and Doe left Greenery, including body shots at Artie's and drinks at Folas's. Moreover, Doe did not begin to black out until after she had this additional alcohol.

Doe also argues that the events at Artie's were merely a continuation of the Wells Fargo holiday party, and thus all alcohol consumed that evening can be attributed to Wells Fargo. But Gretz and Folas left for Artie's without the other guests to meet Folas's

9

high school friends, and there is no indication that Mathisen or anyone else at Wells Fargo contemplated holding a holiday party at Artie's beforehand. Even if there was a general plan to move the group to Artie's, Gretz and Folas continued to drink at Folas's home, which had no connection with their employment at Wells Fargo. Doe also argues that it was foreseeable that party guests would continue to drink after Mathisen closed out the tab, and that the sexual assault was a foreseeable result of that additional drinking. We find it is unreasonable to expect Wells Fargo to exercise control over Gretz and Folas's alcohol consumption after the conclusion of the holiday party, especially since much of that drinking occurred away from the site of the holiday party. The pertinent issue is whether Gretz and Folas became instrumentalities of danger during the holiday party, not whether the holiday party predisposed them to drink more. Moreover, Gretz and Folas's decision to continue drinking had no connection with their employment. There is no indication that Wells Fargo encouraged or authorized them to stay at Greenery, move to Artie's, or take Doe home with them.

Further, contrary to Doe's contention, this case is distinguishable from *Rodgers v. Kemper Constr. Co.*, *supra*, 50 Cal.App.3d 608. In that case, two off-duty employees of a subcontractor drank alcohol at a dry house on a construction site and then asked the plaintiffs, employees of a general contractor, for a ride on a bulldozer. (*Id.* at p. 615–616.) When the plaintiffs refused, the off-duty contractors assaulted them. (*Ibid.*) The court found that the assault occurred within the scope of employment, reasoning it was not unusual for off-duty employees to remain onsite so that they could pickup additional shifts, the employer permitted off-duty employees to consume alcohol in the dry house, and the plaintiffs and their attackers were complete strangers before the assault. (*Id.* at pp. 620–621.) Further, the court held that the initial conflict resulted from a work-related disagreement, specifically the assumption of one attacker that "his status as an employee of the subcontractor carried with it the fringe benefit of free rides on the general contractor's heavy equipment." (*Id.* at p. 622.) In contrast, the assault alleged

10

here took place long after and far away from the site of the Wells Fargo holiday party, there is no evidence that Wells Fargo authorized Gretz and Folas to continue drinking after the conclusion of the party, Gretz and Doe had a preexisting relationship at the time of the incident, and the alleged assault did not arise out of a work-related dispute.

We find that Wells Fargo cannot be held liable for Gretz and Folas's alleged misconduct because that misconduct was not a foreseeable result of their employment or of the Wells Fargo holiday party. We recognize that the scope of employment must be interpreted broadly when assessing claims for vicarious liability. However, California courts have rarely found employers vicariously liable in the context of sexual assaults. (*M.P. v. City of Sacramento*, *supra*, 177 Cal.App.4th at pp. 131–133.) We do not think that Gretz and Folas's scope of employment is broad enough to encompass a sexual assault that occurred at a private residence and was prompted by offsite, after hours drinking.

### C.  Sexual Harassment

Doe argues that the trial court erred in granting summary judgment in favor of Wells Fargo on her claims for sexual harassment under the FEHA. Specifically, she takes issue with the trial court's conclusion that the harassment occurred outside of a work-related context. Doe reasons that the sexual assault arose out of Gretz's continuing managerial duty to get Doe safely home, and that she felt compelled to accompany Gretz by virtue of her managerial authority. Wells Fargo responds that the undisputed facts show that the sexual assault had no connection to Gretz's professional responsibilities or authority. We agree with Wells Fargo.

Under the FEHA, employers are strictly liable for harassment by a supervisor. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1041.) "[I]n order for the employer to avoid strict liability for the supervisor's actions under the FEHA, the harassment must result from a completely private relationship unconnected with the employment." (*Myers*, *supra*, 148 Cal.App.4th at p. 1421.) To succeed on an

FEHA claim, the plaintiff need not show that the harassing conduct occurred in the workplace; however, he or she must show that it occurred in a work-related context. (*Capitol City Foods, Inc. v. Superior Court* (1992) 5 Cal.App.4th 1042, 1048 (*Capitol City Foods*).) The rigid principles of respondeat superior, which are discussed above, do not apply in the FEHA context, but "they do provide guidance in such determinations." (*Farmers Ins. Group. v. County of Santa Clara*, *supra*, 11 Cal.4th at p. 1016, fn. 14.)

In *Myers*, *supra*, 148 Cal.App.4th at pages 1421–1422, the court found that the plaintiff's FEHA claim against her employer could survive summary judgment, even though she was sexually harassed offsite. The employer was in the business of timeshare sales and its employees sometimes offered to follow home customers who had failed to bring their checkbook or credit card, a practice they called "driving for dollars." (*Id.* at p. 1412.) During two driving for dollars excursions, the plaintiff was groped by her supervisor. (*Ibid.*) On the first occasion, the supervisor pretended to be lost and then parked on an isolated dirt road, and on the second he drove her to his house, ostensibly to get work-related documents. (*Id.* at pp. 1412–1413.) The court found that the harassment did not result from a completely private relationship unconnected with the employment, reasoning that there was no personal dating relationship, and the driving for dollars trips benefited the employer's enterprise, even if it did not approve of them. (*Id.* at p. 1421.)

The court reached a different conclusion on the FEHA claims at issue in *Capitol City Foods*, *supra*, 5 Cal.App.4th 1042. In that case, the plaintiff asked her supervisor to join her for a drink outside of work. (*Id.* at p. 1044.) The supervisor agreed, and rescheduled the plaintiff's conflicting work shift. (*Ibid.*) The supervisor then took the plaintiff to his parents' home and allegedly raped her. (*Id.* at pp. 1044–1045.) The trial court denied the employer's motion for summary judgment on the plaintiff's sexual harassment claim and the court reversed, finding no connection between the alleged rape and the plaintiff's employment. (*Id.* at pp. 1046, 1050.) The court reasoned that the

12

defendant conclusively refuted the allegation that the supervisor forced plaintiff to accompany him or coerced her in any way prior to entering his bedroom. (*Id.* at p. 1050.)

We find that this case is more like *Capitol City Foods* than *Myers*. The focus of Doe's complaint and motion for summary judgment is Gretz and Folas's conduct at Folas's residence. As in *Capitol City Foods*, there is no indication that Doe was coerced to go to her supervisor's residence or that the excursion was work-related. Doe voluntarily accepted a ride to Folas's residence long after the Wells Fargo holiday party at Greenery concluded, and the connection between the events at Folas's residence and the holiday party is tenuous at best. Several hours after Matheson settled the Wells Fargo tab at Greenery and offered Doe a ride home, Folas and Gretz left Doe and the remaining party guests behind to join a few high school friends at Artie's.[4] Though there is a factual dispute about whether there was a plan for Doe and the other guests to follow, it is undisputed that Gretz and Folas did not personally invite Doe. Doe decided to join Gretz and Folas at Artie's of her own accord, and there is no evidence that decision was motivated by her employment. After several drinks at Artie's, Doe voluntarily agreed to go home with Gretz and Folas.

Doe makes much of Matheson's statement to Gretz at around 9:30 p.m. that Gretz "make sure [Doe] gets home safely." Doe contends that there is a triable issue of fact as to whether this statement conferred on Gretz a continuing managerial duty, and whether Gretz harassed Doe in the course of performing that duty. This argument might have had some merit if Gretz had taken Doe directly from Greenery to Folas's. But that is not what happened. Any connection to work was broken when Gretz and Folas left Doe at Greenery so that they could meet Folas's high school friends at Artie's. Gretz could not

---

[4] Doe contends that it is disputed whether Gretz and Folas left Greenery before her. At her deposition, Doe stated that the remaining guests left for Artie's around the same time, and Gretz and Folas might have left two minutes before or after her. Regardless, it is undisputed that, before she left Greenery, Gretz did not give or offer Doe a ride to either Artie's or Doe's home.

13

have been acting within the scope of her managerial duties when she was ignoring those duties while drinking at a bar. Doe also contends that Gretz's failure to provide her with safe transportation from Greenery resulted in a continuing duty that culminated in Gretz instructing Doe to come home with her from Artie's. But it strains credulity to suggest that Gretz was carrying out a duty to get Doe home by taking her to Folas's.

Doe argues that there was a plan among the remaining employees to move the Wells Fargo party from Greenery to Artie's. She contends that either Gretz knew she could take Doe home from Artie's, or that Doe went to Artie's to follow her ride. But Gretz did not speak to Doe before leaving for Arties, and there is no evidence that she expected Doe to join her. Other than Doe's testimony that there was "a plan," there is no evidence Gretz expected Doe would join her at Artie's. Moreover, Doe testified that she went to Artie's, not to follow her ride, but to spend more time with her co-workers. In any event, to the extent that there was a plan to move the party to Artie's, that plan did not render the events at Artie's work-related. Wells Fargo cannot be held liable for the events at Artie's, let alone the events that followed, merely because a fraction of its holiday party guests independently decided to meet there. Something more is required to establish an employment nexus.[5]

Next, Doe argues that there is a triable issue of fact as to whether she went home with Gretz because of Gretz's authority as her manager. At her deposition, Doe testified: "Natasha [Gretz] had told me that I was going to her house." Doe then felt pressure on her arm, and remembered walking out of Artie's with Gretz. Doe also testified that she was not comfortable accepting a ride to Gretz's house, but she did not want to offend

---

[5] Doe's assertion that Gretz had a continuing duty to drive her home pursuant to Wells Fargo's written "Holiday Guidelines" fails for similar reasons. In relevant part, the guidelines state: "If a team member or guest appears impaired while attending a Wells Fargo-sponsored event, management should be sure they are given a ride home or provide transportation at company expense." As set forth above, the drinking at Artie's did not constitute a company-sponsored event.

14

Gretz because she "made decisions about [Doe's] work life." Doe also contends that she was in no condition to challenge Gretz because she was inebriated, and that the Wells Fargo holiday party contributed to her impaired state. Finally, Doe asserts that she went home with Gretz because of the earlier instruction from Mathisen.

We find these arguments unpersuasive. Doe's subjective belief alone is insufficient to establish that Gretz's offer was work-related, especially where the objective facts indicated otherwise. The offer was made away from the office after a night of drinking, and there was clearly no work-related reason for Gretz to take Doe home with her. Moreover, there is no evidence that Gretz told Doe that she would be penalized if she refused. Though it is undisputed that Doe was inebriated at the time, she had been drinking alcohol that was neither sanctioned nor paid for by Wells Fargo. We also find it implausible that Mathisen's earlier statement to Gretz had any bearing on Doe's decision. Mathisen told Gretz to make sure that Doe got home safely, not to take Doe home with her.

Contrary to Doe's contention, *Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, does not demand a different conclusion. In that case, the plaintiff, an actor, alleged that his manager at a television network invited him to meet at the manager's home for brunch, where the plaintiff was drugged and then raped. (*Id.* at p. 1043.) The court found that the plaintiff had alleged sufficient facts to support a claim for work-related sexual harassment, even though the manager never told plaintiff that the brunch was a network-sponsored event. (*Id.* at p. 1050.) The court reasoned that the plaintiff had alleged the manager frequently invited him to dine with entertainment executives for the purpose of enhancing the plaintiff's career. (*Ibid.*) The plaintiff had also alleged other facts suggesting that he was at the manager's "beck and call." (*Ibid.*) In contrast, Doe has identified no career-related reason for drinking at Artie's or accompanying Gretz home other than that she wanted to have fun with her colleagues, and that she did not

15

want to upset Gretz. Unlike the plaintiff in *Doe v. Capital Cities*, Doe already had a job and there is no evidence suggesting that she was at the beck and call of Gretz.

As the alleged sexual assault was not work-related, we find that the trial court properly granted summary judgment in favor of Wells Fargo on Doe's FEHA claim for supervisory sexual harassment.

> D.      *Failure to Prevent Harassment or Take Corrective Action*

Doe asserts two separate causes of action under the FEHA for (1) "failure to take steps to prevent harassment, discrimination, and retaliation," and (2) "failure to take appropriate corrective action." She contends that the trial court improperly dismissed both claims on summary judgment. Her argument lacks merit.

As an initial matter, Doe conflates her two claims, arguing that Wells Fargo failed to prevent harassment by neglecting to take appropriate corrective action. She offers no other argument as to her first claim for failure to prevent harassment. This claim fails since the undisputed evidence shows that Wells Fargo has a policy against sexual harassment and requires all employees to take regular sexual harassment training.

Doe's second claim for failure to take appropriate corrective action fails as a matter of law. The FEHA provides that "[h]arassment of an employee . . . by an employee, other than a . . . supervisor . . . shall be unlawful if the [employer] knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (Gov. Code, § 12940, subd. (j)(1).) Thus, failure to take corrective action is only pertinent in instances where a coworker other than a supervisor engages in harassment. In this case, Doe concedes that Gretz was her supervisor and that Folas was a branch manager. Accordingly, whether or not Wells Fargo took immediate and appropriate corrective action is irrelevant to any claims she might have against Wells Fargo under the FEHA. Moreover, failure to take corrective action is not an independent, cognizable claim, but an element of a claim for non-supervisory harassment.

## III.

## DISPOSITION

The judgment is affirmed.  Wells Fargo shall be entitled to costs on appeal.

_____
McGuiness, P.J.

We concur:


_____
Pollak, J.


_____
Jenkins, J.