Filed 8/18/20  Fritz v. Jimenez CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SPENSER FRITZ et al.,<br><br>    Plaintiffs and Appellants,<br><br>  v.<br><br>ROGER OTONIEL JIMENEZ et al.,<br><br>    Defendants and Appellants. | C084291<br><br>(Super. Ct. No. 34-2016-00198654-CU-CR-GDS) |

This case involves a special motion to strike under Code of Civil Procedure[1] section 425.16 (the anti-SLAPP statute)[2] that arises out of protests against Verity Baptist

---

[1]    Further undesignated statutory references are to the Code of Civil Procedure.

[2]    SLAPP is an acronym for " 'strategic lawsuit against public participation.' " (*Blue v. Office of Inspector General* (2018) 23 Cal.App.5th 138, 142, fn. 1.)

1

Church (VBC) and VBC's owner and pastor, Roger Otoniel Jimenez.[3] The protests began after Jimenez delivered sermons praising the killing of almost 50 people in a gay nightclub in Orlando, Florida, in June 2016. In sermons to his congregation and posted on the Internet, Jimenez made such statements as " 'the tragedy is that more of them didn't die. I'm kind of upset that [the shooter] didn't finish the job because these people are predators, these people are abusers . . . the bible paints a picture that these are wicked people.' "

The protestors included plaintiffs Spenser Fritz, Darcy Betinis, and Sean Blackburn (collectively plaintiffs). Plaintiffs allege that during the protests they were subjected to physical violence, death threats, and intimidation[4] by employees and agents of VBC and Jimenez. Plaintiffs assert claims for assault, battery, violation of civil rights under the Ralph Civil Rights Act of 1976 (Civ. Code, § 51.7; hereafter Ralph Act), intentional and negligent infliction of emotional distress, and negligence. Defendants filed an anti-SLAPP motion as to the causes of action for intentional and negligent infliction of emotional distress, Ralph Act claim, and negligence on grounds these claims arise out of protected activity. The trial court denied the motion as to the claims for intentional and negligent infliction of emotional distress, but granted the motion as to the claim for negligence.

---

**3** We take notice of the certificate of interested entities or persons filed on behalf of Jimenez and VBC, stating Jimenez is the owner of VBC. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

**4** For purposes of this discussion, we use "intimidation" in the " ' "the constitutionally proscribable sense of the word [as] a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim[s] in fear of bodily harm or death." ' " (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1212, quoting *Virginia v. Black* (2003) 538 U.S. 343, 360 [155 L.Ed.2d 535].)

Plaintiffs appeal, contending the trial court erred in dismissing their negligence claim. Plaintiffs argue their causes of action do not arise out of protected activity, but only refer to Jimenez's sermons to set forth the context within which the claims arose and incorporated under the negligence cause of action to support the foreseeability element. Plaintiffs also argue procedural irregularity in the trial court disallowing them to properly respond to new arguments and evidence in defendant's reply to plaintiff's opposition to the anti-SLAPP motion.

VBC and Jimenez cross-appeal, contending the trial court erred in denying the anti-SLAPP motion as to the claims of intentional and negligent infliction of emotional distress. VBC and Jimenez argue these claims arise out of protected activity, namely Jimenez's sermons and statements about homosexuality. Notably, all parties agree on appeal that Jimenez's statements in his sermons are constitutionally protected activity. However, the parties disagree on whether the causes of action against VBC and Jimenez arise out of protected activity.

We conclude the trial court erred in dismissing the negligence claim against VBC and Jimenez. Our conclusion rests on the distinction between the *right* of VBC and Jimenez to engage in free speech and their *affirmative duty* to adequately supervise their agents and employees. The record shows agents and employees of VBC and Jimenez engaged in physical violence and intimidation on multiple occasions against plaintiffs. The freedom of VBC and Jimenez to express their opinions on homosexuality does not relieve them of the duty to supervise their agents and employees to prevent reasonably foreseeable acts of physical violence and intimidation. For similar reasons, we conclude the trial court properly denied the anti-SLAPP motion as to the causes of action for intentional and negligent infliction of emotional distress. Plaintiffs' pleadings tie these causes of action to the physical violence and intimidation repeatedly engaged in by agents and employees of VBC and Jimenez. Because physical violence and intimidation are not protected activities, the claims are not subject to dismissal under the anti-SLAPP

3

statute.  Our conclusion the anti-SLAPP motion should have been denied in its entirety obviates the need to consider plaintiffs' contention regarding the procedural irregularity of the briefing in the trial court.

Accordingly, we reverse and remand.

FACTUAL AND PROCEDURAL HISTORY

*Background*

On June 12, 2016, a gunman opened fire in a gay nightclub in Orlando, Florida, killing 49 people and wounding 53 others.  After the shooting, Jimenez delivered sermons to the VBC congregation that praised the shooting and justified the murders on grounds that the victims were homosexuals.  Videos of the sermons were posted on the Internet and included such comments by Jimenez as:  " 'I wish the government would round them all up, put them up against a firing wall, put a firing squad in front of them, and blow their brains out.' "  Jimenez's sermons reiterated the theme that homosexuals should be killed, saying:  " 'They're wicked, they're vile, they're predators.  And God says they deserve the death penalty for what they do.  That's what God says. . . .  God said when you find the sodomite, put them to death.' "  Jimenez encouraged his congregants to "take up arms," and " 'arm and train their children' in preparation for a 'war' against homosexuals and those who support equal rights for all sexual orientations."  VBC's Web site stated that God commanded homosexuals should be put to death.  During a videotaped interview with the Sacramento Bee on June 14, 2016, Jimenez stated:  " 'All I'm saying is that when people die who deserve to die, it's not a tragedy.' "

On June 19, 2016, plaintiffs joined a protest of approximately 1,000 people at VBC.  Law enforcement officers were present on that date.  Shortly after the protest, law enforcement authorities installed video cameras around VBC.  Plaintiffs attended additional protests at VBC between June 19, 2016, and September 7, 2016.  During the

4

protests, plaintiffs were subjected to physical violence and death threats by VBC congregants, employees, and agents.

### *Plaintiffs' Lawsuit*

In August 2016, plaintiffs filed an action against VBC, Jimenez, and various alleged agents. On October 14, 2016, plaintiffs filed an amended complaint, which is the operative complaint.[5] The complaint alleges causes of action for assault and battery against Jimenez, VBC, and VBC's agents, Johnny Cervantes III, Matt Stucky, Al Chiapetta, Vlad Doe, and Ryan Doe (collectively the agent defendants).[6] The complaint alleges claims for intentional and negligent infliction of emotional distress and for violation of the Ralph Act against VBC, Jimenez, and the agent defendants. The complaint also advances a cause of action for negligence against VBC, Jimenez, and Harsch Investment Properties. The negligence cause of action advances two theories of liability: failure to supervise and premises liability.

---

[5] Further references to "complaint" are to this operative complaint.

[6] The complaint inconsistently describes some of the agent defendants as VBC agents in some places and as VBC employees on other places. For example, the complaint's general allegations state Chiapetta, Ryan, Vlad, and Stucky were each an "agent for Defendant VBC." Elsewhere, Ryan is described as "an agent or employee" of VBC. Chiapetta is described as one of the VBC's "agents, employees, or followers" before being included among VBC employees or agents conspiring against the protesters. We do not need to resolve whether the complaint elects whether the agent defendants acted in their capacities as employees or agents of VBC because – for the causes of action at issue in this appeal – both capacities suffice to confer affirmative duties on VBC and Jimenez. "Civil Code section 2338, which has been termed a codification of the respondeat superior doctrine (*Rodgers v. Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 618, fn. 2), is not limited to employer and employee but speaks more broadly of agent and principal; it makes the principal liable for negligent and 'wrongful' acts committed by the agent 'in and as part of the transaction of such [agency] business.' " (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296, fn. 2 (*Lisa M.*).)

***Anti-SLAPP Motion***

In November 2016, an anti-SLAPP motion was filed by VBC and Jimenez. The anti-SLAPP motion was premised on the argument that the complaint sought to chill speech protected by the First Amendment. Thus, the anti-SLAPP motion requested that the trial court dismiss the four causes of action against VBC and Jimenez. The anti-SLAPP motion was unaccompanied by any evidence or declarations.

Plaintiffs opposed the anti-SLAPP motion. They argued the claims against VBC and Jimenez for intentional and negligent infliction of emotional distress and for negligence did not arise out of protected activity but out of their roles "as Principal and supervisor over agents/employees of VBC who harmed Plaintiffs." As to the premises liability theory of the negligence claim, plaintiffs argued that "VBC had possession and control of the property where the violence occurred and the violent actors were also under VBC's and Jimenez's supervision and control." Plaintiffs disclaimed that their causes of action against VBC or Jimenez arose out of the sermons. Instead, plaintiffs stated they alleged facts regarding Jimenez's sermons only to provide the context for the action. Plaintiffs argued that even if the claims related to protected activity, they could nonetheless demonstrate a probability of prevailing on the merits.

Defendants filed a reply brief along with a declaration by Jimenez. Plaintiffs objected to the reply on grounds it contained new facts, arguments, and supporting evidence. The trial court ordered both parties to submit supplemental briefing not to exceed five pages. Defendants filed an ex parte application to file an oversized brief, and plaintiffs opposed the application. Plaintiffs also objected to the evidence submitted in support of defendants' reply.

Plaintiffs filed a supplemental brief to identify which of the defendants' statements supported the claims subject to the anti-SLAPP motion. Plaintiffs asserted that Jimenez's

6

statements were not protected speech but unprotected incitements to violence.[7]  Plaintiffs also cataloged statements by Jimenez in his sermons and VBC agents and congregants that were deemed to support the claims against Jimenez and VBC.  Defendants filed a supplemental brief to argue that all of the statements identified by plaintiffs in support of their claims against VBC and Jimenez were protected speech.

### *Trial Court Ruling*

The trial court granted in part and denied in part the anti-SLAPP motion.  During the hearing on the motion, plaintiffs did not oppose the motion as to the Ralph Act claim.  Accordingly, the trial court dismissed the Ralph Act claim.

The trial court determined that, as a matter of law, Jimenez's statements in his sermons "were not incitements to imminent lawless action, and are protected by the First Amendment."  Nonetheless, the trial court denied the anti-SLAPP motion as to the causes of action for intentional and negligent infliction of emotional distress because "they are based on the violence and threats of violence committed by [the agent] Defendants."  Thus, the trial court concluded VBC and Jimenez did not meet their burden to show these causes of action arose out of protected activity.

The trial court granted the anti-SLAPP motion with respect to plaintiffs' negligence claim.  The trial court recognized that VBC and Jimenez had a duty to supervise its employees and agents and that it was foreseeable plaintiffs would be harmed "as a result of Jimenez's conduct in advocating violence against Plaintiffs . . . ." (Underscoring omitted.)  The trial court also recognized plaintiffs' claim for premises

---

[7]     Plaintiffs' arguments in the trial court waffled on whether Jimenez's sermons constituted protected or unprotected speech.  However, on appeal, plaintiffs clearly agree the sermons and statements on homosexuality addressed to the congregation and the general public were protected speech.  Because all parties agree the sermons and statements are protected activity, we do not need to wade into the difficult question of whether any of Jimenez's statements in his sermons immediately prior to the violence against the protestors constituted calls to imminent violence.

liability based on negligent conduct. However, the trial court determined that "these causes of action arise from statements made by Jimenez." Accordingly, the trial court dismissed the cause of action for negligence against VBC and Jimenez.

Plaintiffs timely filed a notice of appeal. VBC and Jimenez timely filed a notice of cross-appeal.

## APPEAL BY PLAINTIFFS

### I

### *Negligence*

Plaintiffs argue the trial court erred in dismissing their negligence claims against VBC and Jimenez because the claims arise out of violence and intimidation rather than protected activity. We conclude the negligence cause of action should not have been dismissed.

### A.

### *Gravamen of the Negligence Cause of Action*

To ascertain the gravamen of plaintiffs' negligence claim against VBC and Jimenez, we begin by reviewing their complaint. The complaint begins with general allegations that precede the articulation of the negligence cause of action. The general allegations identify the following defendants as agents for VBC: Chiapetta, Cervantes, Stucky, Vlad, and Ryan. The complaint also identifies VBC congregants who engaged in physical violence against and/or intimidation of plaintiffs "on numerous occasions between June 19, 2016 and September 7, 2016."

The complaint recounts numerous instances of speech by Jimenez in which he advocated putting homosexuals to death based on his interpretation of the Bible. In a typical comment during his sermons, Jimenez stated: " 'I wish the government would round them all up, put them up against a firing wall, put a firing squad in front of them, and blow their brains out. Government that loved God and loved children, that's what we'd do.' "

8

Plaintiffs then recounted in their complaint numerous instances of physical violence and intimidation against them. Plaintiffs also introduced evidence in the form of declarations and documents in support of their claims.

### 1. *The Agency or Employment of Ryan, Vlad, Chiapetta, and Stucky by VBC*

Fritz declared that Ryan, Vlad, and Stucky were present at every protest he attended at VBC. Stucky "is the church's deacon, an assistant pastor, employed by VBC and under Jimenez's supervision. He wears a black suit coat that matches the maroon coats worn by Ryan DOE and Vlad DOE except for the color." Stucky was seen leading VBC agents/or employees wearing maroon coats in the VBC parking lot. During the events described below, VBC agents/or employees wore their employment-related coats. These events "took place either immediately before, during, or after services, while the Defendants were working." Chiapetta served Betinis with a notice of trespass on behalf of VBC and in his capacity as "song leader."

### 2. *June 19, 2016*

June 19, 2016, was the first protest at VBC attended by plaintiffs. On that occasion, congregants threw items from their cars and hit plaintiffs. Congregants would continue throwing items at plaintiffs on numerous subsequent occasions.

### 3. *June 27, 2016*

On June 27, 2016, Ryan told the protestors that the video surveillance cameras put up by the police were there for the protestors' protection. Blackburn asked what Ryan meant, and Ryan responded: " 'When the cameras are gone, I'll kill you.' "

### 4. *July 3, 2016*

On July 3, 2016, Ryan told Blackburn he wanted to fight Blackburn and told Blackburn to follow him to Ryan's truck that was parked outside the view of the video cameras set up by the police.

### 5. *July 5, 2016*

On July 5, 2016, Blackburn saw a car driving "conspicuously and slowly past his house." He identified the license plate as belonging to a car owned by Jimenez. Approximately two weeks later, Blackburn saw Ryan's distinctive truck twice "drive conspicuously and slowly past his house." Around that time, other protestors were stalked by VBC agents and congregants. One protestor was stalked by a congregant who had brandished a knife and threatened to kill a protestor after a VBC service.

### 6. *July 6, 2016*

On July 6, 2016, Fritz and Doe 101[8] were waiting outside the church to speak to congregants on their way out. Ryan deliberately struck Fritz with the door before closing it again. One of the congregants then told Fritz not to speak to one of the young adult congregants. Fritz began to respond when Cervantes said, " 'Don't fucking talk to my wife!' " Cervantes "lunged forward and placed his hands on Fritz's chest and pushed Fritz with a great deal of force." This conduct was documented by photographs. Fritz was then surrounded by Vlad and other VBC employees "in a menacing and threatening manner." Fritz declared that ". . . VBC employees in [maroon] coats surrounded me and threatened me . . . ." Believing he was about to be attacked, Fritz stated he was going to call the police. Vlad and the congregants moved aside, let Fritz pass, and followed him to the group of other protesters.

Doe 1, a congregant, left the church and turned toward the protestors with a knife in front of her. She told Doe 101, a protester, that " 'you have no idea how much I want to kill you right now.' " Ryan – who was wearing his maroon VBC coat – pushed Doe 101 and said, " 'Did you just hit me in the fucking nuts? Really? Get the hell out of

---

**8**    Plaintiffs describe Doe 101 as "an involuntary plaintiff" who "was subjected to violence and threats of violence by Defendants," but who does not wish to join the complaint as a party due to fear of retaliation by defendants.

here.' " Ryan initiated all contact with Doe 101, who did not hit Ryan. Doe 101 was then surrounded by a group of VBC congregants and agents. Betinis tried to diffuse the situation by stepping between Doe 101 and the congregants and agents. She was then surrounded by Ryan, Cervantes, Vlad, and approximately 23 congregants. One of the congregants pushed Betinis in her stomach and then "came towards her in a menacing manner." Fearing for her safety, Betinis pushed the congregant away and retreated back to the other protesters.

Vlad and Stucky made unwanted physical contact with Blackburn as he tried to photograph the license plate of Cervantes's vehicle. Cervantes was trying to leave before the police arrived. When the police arrived, they placed Fritz in handcuffs because one of the congregants reported that Fritz " 'hit him in the balls.' " None of the plaintiffs engaged in physical contact with any congregants, and images of the events of that day were captured on video by one of the protesters.

### 7. *July and August 2016*

The complaint alleges that, during the months of July and August, Vlad, Ryan, and congregants "made threats to the protesters that they knew where protestors lived or worked." During these months, Jimenez "encouraged his parishioners to take up arms and 'arm and train their children' in preparation for a 'war' against homosexuals and those who support equal rights for all sexual orientations. Jimenez reinforced his previous sermons that homosexuals are sub-human and worthy only of death."

### 8. *August 13, 2016*

On August 13, 2016, Ryan drove his vehicle at Doe 101. Doe 101 "jumped aside as Ryan sped past."

### 9. *September 7, 2016*

On September 7, 2016, a congregant threw two eggs at Betinis. The second egg knocked the glasses off Betinis's face and caused her nose to bleed. The eggs were thrown with such force that Betinis suffered facial pain for several weeks.

11

**10.** *September 11, 2016*

On or around September 11, 2016, Chiapetta acted on behalf of VBC by serving Betinis with a notice of trespass. In the notice, Chiapetta was listed as "song leader" for VBC.

**11.** *Plaintiffs Stop Protesting at VBC*

Plaintiffs stopped regularly protesting in September 2016 for fear of their safety and retaliation by defendants.

**12.** *The Documentary*

On October 11, 2016, Fritz saw a documentary produced by the British Broadcasting Company titled, " 'America's Hate Preachers.' " In the documentary, Stucky "can be seen bragging to Pastor Steven Anderson about Al Chiapetta 'coining' the racist names Defendants used against DOE 101, indicating that VBC employees not only knew about the conflict between the protesters and VBC employees, but encouraged and participated in the same." Anderson is pastor of an Arizona church "aligned with VBC" and has given several sermons at VBC. Anderson is not a named defendant.

### B.

### *The Anti-SLAPP Statute*

The anti-SLAPP statute provides, in relevant part, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The anti-SLAPP statute requires us to engage in a two-step analysis: "Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. (§ 425.16, subd. (b); see § 425.16, subd. (e) [defining protected activity]; *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12,

12

21; *Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 66-67.) If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 . . . .)" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

We review a challenge to the trial court's ruling on an anti-SLAPP motion under the independent standard of review. (*Park*, *supra*, 2 Cal.5th at p. 1067; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) This means that we use our "independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. (*Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd*. (2014) 225 Cal.App.4th 1345, 1350; *Martin v. Inland Empire Utilities Agency* [(2011)] 198 Cal.App.4th [611,] 624.) . . . We do not, however, weigh the evidence, but accept the plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park*, *supra*, 2 Cal.5th at p. 1067.)

## C.

### *Protected Activity*

The anti-SLAPP statute is intended to safeguard freedom of expression as protected activity. (§ 425.16, subd. (a).) Freedom of expression under the First Amendment includes unpopular and hateful speech. (*In re Joshua H*. (1993) 13 Cal.App.4th 1734, 1746.) Freedom of expression, however, does not include the right to use violence to carry out the viewpoint expressed. (*Id.* at p. 1743; *NAACP v. Claiborne Hardware Co*. (1982) 458 U.S. 886, 916 [73 L.Ed.2d 1215].)

Speech and conduct are often intertwined. (See generally *In re Joshua H.*, *supra*, 13 Cal.App.4th at pp. 1743-1746.) Thus, the first task in reviewing a ruling on an anti-SLAPP motion is to determine whether a claim is directed at protected activity so that it is subject to dismissal or whether protected speech merely provides the context for the circumstances within which unprotected conduct occurred. On this point, the California

13

Supreme Court in *Park* cautioned that "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck *only if the speech or petitioning activity itself is the wrong complained of*, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra,* 2 Cal.5th at p. 1060, italics added.) Consequently, we "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063.)

## D.

### *Respondeat Superior*

Under the doctrine of respondeat superior, California employers have an affirmative duty to supervise and manage their employees and agents. As the California Supreme Court has explained, "The rule of respondeat superior is familiar and simply stated: an employer is vicariously liable for the torts of its employees committed within the scope of the employment. (*Perez v. Van Groningen & Sons, Inc*. (1986) 41 Cal.3d 962, 967.) Equally well established, if somewhat surprising on first encounter, is the principle that an employee's willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts." (*Lisa M.*, *supra*, 12 Cal.4th at pp. 296-297, fn. omitted.) Liability under respondeat superior "is not limited to employer and employee but speaks more broadly of agent and principal; [Civil Code section 2338] makes the principal liable for negligent and 'wrongful' acts committed by the agent 'in and as part of the transaction of such [agency] business.' " (*Id.* at p. 297, fn. 2.)

The liability of an employer for the tortious acts of employees and agents requires consideration of the risks inherent in the enterprise. " ' "[T]he employer's liability

14

extends beyond his [or her] actual or possible control of the employee to include risks inherent in or created by the enterprise." ' ([*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992,] 1003, italics omitted.) ' "[T]he fact that an employee is not engaged in the ultimate object of his [or her] employment at the time of his wrongful act does not preclude attribution of liability to an employer." ' (*Id*. at p. 1004.) Thus, an employer's vicarious liability may extend to the employee's negligence, willful and malicious torts, or acts that contravene an express company rule and confer no benefit to the employer. (*Ibid*.)" (*Purton v. Marriott Internat., Inc*. (2013) 218 Cal.App.4th 499, 505 (*Purton*).)

The rule of respondeat superior extends to an employee or agent's reasonably foreseeable tortious conduct within the scope of employment. Thus, "an employer may be vicariously liable for an employee's tort if the employee's act was an ' "outgrowth" ' of his [or her] employment, ' " 'inherent in the working environment,' " ' ' " 'typical of or broadly incidental to' " ' the employer's business, or, in a general way, foreseeable from the employee's duties. (*Lisa M*.[, *supra*, 12 Cal.4th] at pp. 298-299.) Foreseeability in the context of respondeat superior liability must be distinguished from foreseeability as a test for negligence. (*Farmers* [*Ins. Group v. County of Santa Clara* (1995)] 11 Cal.4th [992,] 1004.) ' " '[F]oreseeability' as a test for respondeat superior merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." ' (*Ibid*., italics omitted.)" (*Purton*, *supra*, 218 Cal.App.4th at p. 505.)

### E.

### *VBC and Jimenez's Liability under Respondeat Superior*

The trial court erred in dismissing plaintiffs' negligence claim under the rule of respondeat superior. The gravamen of plaintiff's respondeat superior negligence claim was that VBC and Jimenez "had a general duty to exercise ordinary care in managing its

agents and employees . . . ." The rights of VBC and Jimenez to articulate their viewpoint on homosexuality did not absolve them of the affirmative duty as employer to adequately select, train, and supervise VBC employees and agents.

Plaintiffs allege VBC employees and agents engaged in repeated acts of physical violence and intimidation. They were physically assaulted and battered by VBC's assistant pastor and VBC employees or agents while they were wearing their VBC suit coats. These incidents of violence and intimidation occurred immediately before, during, or after VBC services. And they occurred on the VBC property or adjacent parking lot used by VBC congregants. The violence against the plaintiffs was repeated and regular until the plaintiffs were so intimidated that they abandoned their protests.

Plaintiffs' respondeat superior negligence cause of action is directed to unprotected conduct in the form of physical violence and intimidation. These recurring, similar acts of physical violence showed the foreseeability of the harm even without the need to refer to Jimenez's sermons. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 677, disapproved of on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 522.) When presented with repeat acts of violence, " '[i]t is difficult to imagine a case in which the foreseeability of harm could be more clear.' " (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1219-1220, fn. omitted, quoting *Madhani v. Cooper* (2003) 106 Cal.App.4th 412, 415.) The essence of plaintiffs' claims against VBC and Jimenez is not that they were injured by Jimenez's words, but by the physical violence and intimidation of VBC and Jimenez's employees and agents. Consequently, the gravamen of the complaint is not directed to protected activity and should not have been dismissed under the anti-SLAPP statute.

Plaintiffs' complaint does recount numerous statements by Jimenez in which he expressed his desire that homosexuals be put to death. All parties agree on appeal that Jimenez's statements are protected speech, and we assume that protected status for purposes of this analysis. Even though speech may be constitutionally protected, it may

16

also be used to provide the context for conduct that is not constitutionally protected. (*Park, supra,* 2 Cal.5th at p. 1060.) Thus, we consider whether "the speech . . . is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Ibid.*) Here, the speech is not the wrong complained of in plaintiffs' respondeat superior cause of action for negligence. Instead, the speech provides the context within which the repeat violence and intimidation of the protestors occurred.

The sermons of Jimenez provide for a clearer understanding of the situation in which the conduct by VBC and Jimenez's agents and employees happened. However, the statements of Jimenez are not the focus of the negligence claim. Plaintiffs' negligence claims are colorable even if none of Jimenez's statements were contained on the complaint because the complaint would still set forth such regular occurrences of violence and intimidation that a claim for negligent supervision would be stated. Even so, plaintiffs are entitled to rely on Jimenez's sermons and statements to help establish the foreseeability of physical violence and intimidation against them as a risk inherent in the way VBC and Jimenez conducted the enterprise. As a result, the trial court erred in determining that plaintiffs' reliance on Jimenez's statements to prove context and show foreseeability rendered the claim as one premised on protected activity.

Because we accept the allegations of the complaint for purposes of anti-SLAPP analysis (*Park*, *supra*, 2 Cal.5th at p. 1067), we reject VBC and Jimenez's denials on appeal that Vlad, Chiapetta, and Ryan are not employees or agents of VBC and Jimenez. In their reply to plaintiffs' opposition, they contested the facts of employment and agency but without establishing their factual contention as a matter of law. Instead, their contest of the facts of employment or agency presents questions for a trier of fact and is not a basis for dismissing the negligence claim as a matter of law. (*Ibid.*) And the trial court's statement of decision noted that it was not considering the defendants' reply for any of

17

the facts asserted in the argument. Defendants have not challenged on appeal that portion of the trial court's statement of decision.

In sum, plaintiffs' respondeat superior cause of action for negligence is premised on physical violence and intimidation for which protected activity provides context and foreseeability of harm. Accordingly, we reverse the trial court's dismissal of this theory of plaintiffs' negligence claim.

**F.**

### *Negligence Under a Theory of Premises Liability*

For similar reasons, we conclude the trial court erred in dismissing the negligence cause of action insofar as it was based on a theory of premises liability.

Both claims for negligent supervision and negligence relating to premises liability arise out of an affirmative duty to safeguard others. (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158 (*Kesner*).) As the Supreme Court explained in *Kesner*, "The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury. (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998; see *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [negligence cause of action]; *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 [cause of action for premises liability].) Premises liability ' "is grounded in the possession of the premises and the attendant right to control and manage the premises" '; accordingly, ' "mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of *an affirmative duty to act*." ' (*Preston v. Goldman* (1986) 42 Cal.3d 108, 118, italics omitted, quoting *Sprecher v. Adamson Companies* (1981) 30 Cal.3d 358, 368, 370.) But the duty arising from possession and control of property is adherence to the same standard of care that applies in negligence cases. (*Rowland* [*v. Christian* (1968)] 69 Cal.2d [108,] 119 ['The proper test to be applied to the liability of the possessor of land . . . is whether in the management of his

18

[or her] property he [or she] has acted as a reasonable [person] *in view of the probability of injury to others . . . .'] . . . .)"* (*Ibid.*, italics added.)

Here, plaintiffs alleged VBC and Jimenez had an affirmative duty to act to protect persons who come on to the premises because VBC and Jimenez held the premises open to the public. While on the VBC premises, plaintiffs were physically assaulted and battered on numerous occasions by VBC employees, agents, and congregants. Indeed, the complaint recounts incidents of assault and battery against the protesters on VBC premises at least on June 19, July 6, August 13, and September 7, 2016. The complaint indicates that additional violence against the protestors was prevented only by video cameras the police set up to record the interactions on VBC premises. When the police cameras were gone on July 6, multiple acts of assault and battery were allegedly committed by VBC employees and agents. The complaint thus alleges repeated acts of physical violence setting forth a colorable claim of premises liability that the trial court erred in dismissing.

As with the negligent supervision claim, the cause of action for premises liability is not based on protected activity. Assault and battery are not protected activity encompassed within the right to freedom of expression. (*In re Joshua H.*, *supra*, 13 Cal.App.4th at p. 1743.) Instead, VBC and Jimenez had an affirmative duty to prevent physical harm to those on VBC premises. Premises liability extends to property that was subject to VBC control or management. (*Preston v. Goldman* (1986) 42 Cal.3d 108, 118.)

As part of their burden of proof, plaintiffs are required to establish the reasonable foreseeability of their injury. (*Kesner, supra,* 1 Cal.5th at pp. 1158-1159.) To establish the element of foreseeability, plaintiffs rely on the statements of VBC and Jimenez that directed hateful comments toward homosexuals. These comments set forth the context within which VBC congregants, agents, and employees all engaged in numerous acts of physical violence on the premises and against plaintiffs. However, the fact that the

19

speech relied upon to establish the context of the claim is protected activity does not render the claim subject to the anti-SLAPP statute.  Instead, the statements of Jimenez could be entirely excluded from the complaint and the cause of action would still be colorable in light of allegations that the VBC property was open to the public and was the site of repeated acts of violence against the protestors.  (*Ibid*.)  The gravamen of this cause of action is not speech, but actual physical violence and intimidation.  Consequently, the trial court erred in dismissing the negligence claim based on premises liability.

CROSS-APPEAL BY DEFENDANTS

II

*Intentional and Negligent Infliction of Emotional Distress*

VBC and Jimenez cross-appeal, arguing the trial court erred in denying their motion to dismiss the causes of action for intentional and negligent infliction of emotional distress.  We are not persuaded.

A.

*Physical Violence and Intimidation*

The complaint alleges that each of the plaintiffs was the direct victim of physical violence by VBC agents and employees.  Fritz was hit by Ryan, who deliberately opened the door on him.  Fritz was pushed by Cervantes "with a great deal of force."  VBC employees surrounded and threatened Fritz so that he believed attack was imminent.  Betinis was pushed in the stomach by a congregant, who then came at her in a "menacing manner."  Vlad and Stucky made unwanted physical contact with Blackburn.  Congregants threw eggs at Betinis with such force that they caused her nose to bleed and her face to hurt for several weeks.  In addition, congregants threw objects and struck plaintiffs on numerous occasions.  Agents and employees stated they knew where the protestors lived and worked.  The complaint also alleges that "Ryan and Jimenez stalked and harassed Blackburn by driving past his house after threats were made against

20

Blackburn." Based on these facts, plaintiffs claim that "[d]efendants knew or should have known that their acts of violence and intimidation would cause Plaintiffs emotional distress."

## B.

### *Intentional and Negligent Infliction of Emotional Distress*

A claim for intentional infliction of emotional distress requires proof of " ' " ' " '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' " ' " ' " (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1609, quoting *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.)

A claim for negligent infliction of emotional distress " 'is not an independent tort, but the tort of *negligence*. [Citation.] The traditional elements of duty, breach of duty, causation, and damages apply. [¶] Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability. [Citation.]' (*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588, italics in the original, internal quotation marks omitted . . . .)" (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072 (*Burgess*).)

Both intentional and negligent infliction of emotional distress may be premised on claims that plaintiff is a direct victim of physical injury caused by a defendant's negligence. "[I]t is settled in California that in ordinary negligence actions for physical injury, recovery for emotional distress caused by that injury is available as an item of parasitic damages. (*Crisci v. Security Insurance* Co. (1967) 66 Cal.2d 425, 433; *Merenda v. Superior Court* (1992) 3 Cal.App.4th 1, 8-9.) Where a plaintiff can demonstrate a physical injury caused by the defendant's negligence, anxiety specifically due to a

21

reasonable fear of a future harm attributable to the injury may also constitute a proper element of damages. (E.g., *Jones v. United Railroads of San Francisco* (1921) 54 Cal.App. 744 [affirming damages for emotional distress endured up to time of trial where plaintiff reasonably feared permanent disability in the future as direct and proximate result from physical injury received in accident].)" (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 981.)

Threats of death or physical harm can support a claim for intentional infliction of emotional distress. (*Kiseskey v. Carpenters' Trust for So. California* (1983) 144 Cal.App.3d 222, 229-230.) In *Kiseskey*, plaintiff was called by defendant and defendant's agents who threatened to kill plaintiff and his family if plaintiff did not sign a new union agreement. (*Id.* at pp. 226, 229.) Specifically, defendant and his agents threatened that plaintiff would " 'be put in the hospital,' " and that plaintiff " 'might not live to regret it.' " (*Id.* at p. 229.) After plaintiff resisted signing the new agreement, defendant and his agents telephoned plaintiff and threatened: " 'Since you do not seem to be concerned about your safety and well-being, maybe you will be concerned about the well-being of your life and children.' " (*Ibid.*) The *Kiseskey* court held these directly communicated death threats constituted outrageous conduct. (*Ibid.*) "Each of these statements taken alone, or considered together as part of a course of conduct, needs no delicate weighing in order to conclude that it constitutes outrageous conduct." (*Ibid.*)

## C.

### *Plaintiffs Alleged Direct Victim Liability*

We begin by noting the scope of plaintiffs' claims for emotional distress. Plaintiffs' complaint shows they are not seeking damages for distress under a theory of bystander liability. (See generally *Burgess*, *supra,* 2 Cal.4th at p. 1073 [explaining that "bystander liability is premised upon a defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another"].) Instead, plaintiffs allege each was the victim of physical violence by agents, employees,

22

and congregants of VBC and Jimenez. Plaintiffs further allege these agents, employees, and congregants engaged in further extreme and outrageous conduct in the form of death threats and intimidation. The emotional distress claims are primarily based on the acts of these agents, employees, and congregants.

The emotional distress claims are also premised on claims that Jimenez himself and Ryan engaged in extreme and outrageous stalking behavior by driving by Blackburn's house in a "conspicuous" manner. However, the focus of the emotional distress claims is on VBC and Jimenez's negligent conduct in failing to supervise their agents and employees despite repeat violence against the protestors and the batteries of plaintiffs caused by congregants on numerous occasions.

We conclude the claim that Jimenez's car and Ryan's truck were driven past Blackburn's house does not allege extreme and outrageous behavior that warrants emotional distress damages. Merely driving by a person's house – even in a "conspicuous" manner – does not constitute outrageous conduct that exceeds all bounds of conduct tolerated in a civilized community. (*Hughes v. Pair*, *supra*, 46 Cal.4th 1035, 1051.) The alleged driving-by did not constitute trespass, assault, or any other tort. There were no statements made during the incident and Blackburn sustained no physical injury. We decline to hold the act of driving "conspicuously" past a house constitutes outrageous conduct.

However, repeated physical violence and death threats directly made to plaintiffs by VBC agents and employees constituted extreme and outrageous conduct. In their negligence cause of action, plaintiffs alleged VBC and Jimenez had affirmative duties to supervise and train their agents and employees to avoid inflicting violence and intimidation. Plaintiffs further alleged VBC and Jimenez had an affirmative duty to ensure the safety of persons on premises held open to the public. The dereliction of these affirmative duties with the resulting unwanted physical injuries and unwanted contacts

23

along with repeated death threats lies beyond the conduct that can be tolerated in a civilized society.

VBC and Jimenez argue plaintiffs did not sufficiently prove any agency or employment of Vlad, Ryan, Chiapetta, and other defendants. VBC and Jimenez additionally argue that even if the agent defendants were in fact their agents or employees, there was insufficient proof they were acting within the scope of their duties when engaging the protesters. Thus, VBC and Jimenez argue the trial court erred in determining plaintiffs established a reasonable probability of prevailing on their claim. We disagree.

As we have explained, the gravamen of plaintiff's claims of negligence as well as intentional and negligent infliction of emotional distress all arise out of VBC and Jimenez's dereliction of their affirmative duties toward the protestors. Because the complaint does not arise out of protected activity, the anti-SLAPP motion should have been denied under the first step of the analysis under section 425.16. (*Park, supra,* 2 Cal.5th at p. 1061.) There is no need to consider plaintiffs' probability of prevailing on their claims under the second step of the anti-SLAPP analysis. (*Ibid.*) Accordingly, we need not address VBC and Jimenez's factual assertions regarding the plaintiffs' probability of prevailing on their claims.[9] The trial court properly denied the anti-SLAPP motion as to the claims for intentional and negligent infliction of emotional distress because they are not premised on protected activity.

---

[9] We also do not consider VBC and Jimenez's arguments regarding the trial court's dismissal of the cause of action under the Ralph Act. VBC and Jimenez are not aggrieved by the trial court's ruling in their favor on this point. (*People v. Stark* (2005) 131 Cal.App.4th 184, 201.)

24

## DISPOSITION

The order granting the special motion to strike is reversed insofar as it dismissed plaintiffs' cause of action for negligence against VBC and Jimenez.  Plaintiffs Spenser Fritz, Darcy Betinis, and Sean Blackburn shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/s/ _____
HOCH, J.

We concur:

/s/ _____
HULL, Acting P. J.

/s/ _____
BUTZ, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.